**Mark EILRICH, Plaintiff–Appellant,**

v.

**Bernard J. REMAS, et al., Defendants–Appellees.**

No. 86–2940.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 7, 1987.

Decided Feb. 17, 1988.

Amitai Schwartz, Law Offices of Amitai Schwartz, San Francisco, Cal., for plaintiff-appellant.

Charles K. Brunn, Philip W. Harvey, Brunn, Thayer, Flynn & Harvey, and Michael D. Milich, Modesto, Cal., for defendants-appellees.

---

Before SKOPIL, and NELSON, Circuit Judges, and O'SCANNLAIN,[*] Circuit Judge.

NELSON, Circuit Judge:

Appellant Mark Eilrich, a municipal police officer, was discharged by the City of Riverbank ("the City") after making statements about a controversy within the police department to the Riverbank City Council. A city administrative hearing officer, in upholding Eilrich's discharge, determined that the statements were not protected by the first amendment. The district court granted summary judgment for the City, finding that collateral estoppel barred Eilrich's claim for relief under 42 U.S.C. § 1983 (1982). The district court had jurisdiction pursuant to 28 U.S.C. § 1343 (1982). We have jurisdiction pursuant to 28 U.S.C. § 1291 (1982). We affirm.

## BACKGROUND

The City discharged Eilrich on November 21, 1984 in response to statements he made as a representative of the Riverbank Police Officer's Association at a city council meeting. Eilrich was discharged for making the following statements, which were part of one speech delivered during the public business portion of the meeting:

1. "Chief Remas has recently commented in the local news media, in response to our publicly made unanimous 'no confidence' vote of his, ah, management practices, that it is his belief that the Riverbank Police Department is currently 'strong and viable' as an organization. It is our equally strong belief, as the actual members of the organization which he is describing, that his contention is simply false."

2. "Over the past several years it has been the policy of the Chief of Police to cause dismissal of traffic citations in the interest of justice."

3. "This practice is an unethical use of the Chief's power for his own personal or political purposes."

4. "There's been a misappropriation of public funds or time by favored members of the Police Department and although this was brought to the attention of the Chief of Police, no action was taken."

5. "Since our attendance at the last Council meeting and resulting local publicity, members of our association have been threatened with job action if they persisted in communicating with the media."

6. "There have been grievances filed through the Chief of Police up to the City Administrator, and not on every particular item."

The City discharged Eilrich, alleging that the statements constituted (1) insubordination; (2) dishonesty; and (3) failure to follow specific grievance procedures. Eilrich appealed his discharge pursuant to Cal.Gov't Code § 3304(b) (West 1980) and the City's Merit System Rules and Regulations ("the City Rules"). The hearing officer, a retired California Superior Court judge, held a 14-day proceeding. The hearing officer had adjudicatory power to resolve all the disputed issues submitted by the parties pursuant to Cal.Gov't Code §§ 11513 & 19570, et seq., (West 1980 & Supp.1987) and the City Rules. On May 1, 1985, the hearing officer found that the City had not proved that Eilrich violated the City Rules by speaking to the city council rather than following the formal grievance procedures. However, the officer upheld Eilrich's discharge on the grounds of insubordination and dishonesty. He found that Eilrich made the statements at issue; that they constituted insubordination; and that they were "false and were made wilfully, recklessly, and irresponsibly." The hearing officer determined that the statements were not protected by the first amendment because he found, after examining the factual circumstances surrounding the statements, that the City's interest in efficient functioning of the po-

* Judge O'Scannlain was drawn to replace Judge Kennedy. He has read the briefs, reviewed the record and listened to the tape of oral argument held on Oct. 7, 1987.

lice force outweighed Eilrich's interest in expressing his views on a matter of public concern.

After the decision, the City Attorney immediately sent a letter notifying Eilrich that judicial review of this determination by a California superior court was available. However, the administrative decision became final when Eilrich failed to appeal within the statutory period. *See* Cal.Civ. Proc.Code §§ 1094.5, 1094.6 (West 1980). Eilrich subsequently filed a 42 U.S.C. § 1983 action in the district court on November 14, 1985, claiming that the appellees impermissibly discharged him for exercising his first amendment rights. On November 10, 1986, the district court granted the City's motion for summary judgment, finding that collateral estoppel barred consideration of the claim because the scope of protection afforded the statements by the first amendment had been determined in the prior proceeding. Eilrich timely appealed.

### ISSUE PRESENTED

Whether collateral estoppel bars consideration of Eilrich's 42 U.S.C. § 1983 claim because the same issues were resolved in a prior unreviewed administrative determination.

### STANDARD OF REVIEW

■ The availability of collateral estoppel is a mixed question of law and fact which this court reviews de novo. *Davis & Cox v. Summa Corp.,* 751 F.2d 1507, 1519 (9th Cir.1985). If collateral estoppel is available, this court reviews the district court's decision giving preclusive effect to the determination of the municipal hearing officer for abuse of discretion. *See Plaine v. McCabe,* 797 F.2d 713, 718 (9th Cir.1986).

### DISCUSSION

### I. THE AVAILABILITY OF COLLATERAL ESTOPPEL

■ Collateral estoppel, or "issue preclusion", requires that "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and

the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." Restatement (Second) of Judgments § 27 (1982). Federal courts must give preclusive effect to state court reviewed administrative determinations under 28 U.S.C. § 1738, *Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985), and to unreviewed administrative findings under federal common law rules of preclusion. *University of Tennessee v. Elliott,* 478 U.S. 788, 106 S.Ct. 3220, 3224, 92 L.Ed.2d 635 (1986). In *Elliott,* the Court held that state administrative proceedings must be given the same preclusive effect they would be given in that state when an administrative agency, "acting in a judicial capacity ... resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate." 106 S.Ct. at 3227 (quoting *United States v. Utah Constr. & Mining Co.,* 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed. 2d 642 (1966)).

Eilrich argues that the administrative decision was not preclusive because it was not reviewed by the California courts. Under California law, a discharged police officer is entitled to de novo judicial review of administrative agency determinations. *See* Cal.Civ.Proc.Code § 1094.5 (West 1980); *Perea v. Fales,* 39 Cal.App.3d 939, 114 Cal. Rptr. 808 (1974). Eilrich failed to seek review by the California courts even though he was advised of its availability. "If an adequate opportunity for review is available, a losing party cannot obstruct the preclusive use of the state administrative decision simply by foregoing [the] right to appeal." *Plaine,* 797 F.2d at 719 n. 12. In *Plaine,* we applied preclusion in similar circumstances when an appellant failed to seek judicial review by the California courts. Likewise, the discharged employee in *Elliott* failed to appeal an administrative determination through the state courts, 106 S.Ct. at 3223, and the Court applied collateral estoppel to bar his § 1983

claim even though the prior determination was unreviewed. *Id.* at 3225–26.

Eilrich relies on a Ninth Circuit case applying federal common law principles of collateral estoppel to argue that unreviewed administrative findings do not merit preclusive effect. *Mack v. South Bay Beer Distributors, Inc.*, 798 F.2d 1279 (9th Cir.1986). Such reliance is misplaced because the court in *Mack* declined to give an unreviewed administrative hearing preclusive effect primarily because the plaintiff had had no opportunity to litigate his age discrimination claim, applying the *Utah Construction* standard. *Id.* at 1283. The nature of the unemployment compensation hearing had denied him the opportunity to litigate his claim and it was unclear if any evidence at all on the issue of age discrimination had been presented. *Id.* at 1283–84.

Eilrich also argues that this court should distinguish between according preclusive effect to state and *municipal* administrative determinations. Federal courts afford preclusive effect to state determinations because of comity and finality concerns. *Elliott*, 106 S.Ct. at 3226–27. The finality interests in according preclusive effect to both types of determinations are identical. Although the comity interests in affording preclusive effect to municipal and state determinations are not identical, respecting a state court system for review of administrative decisions is furthered by applying collateral estoppel to Eilrich's claim. If collateral estoppel is not applicable to unreviewed municipal decisions, litigants will be encouraged to avoid state court review of municipal administrative determinations in order to obtain federal review of their claims. Looking to California preclusion law, as the Supreme Court instructed in *Elliott*, we find support for this conclusion. California courts accord collateral estoppel effect to municipal administrative hearings that have sufficient judicial safeguards. *See, e.g., City & County of San Francisco*

*v. Ang*, 97 Cal.App.3d 673, 679, 159 Cal. Rptr. 56, 59 (1979).

Thus, Eilrich's argument must fail if the administrative hearing meets the standards of California law, incorporating the *Utah Construction* standard.[1]

## II. THE DISTRICT COURT'S APPLICATION OF CALIFORNIA LAW

The district court did not abuse its discretion in precluding relitigation of Eilrich's first amendment issue in the § 1983 action because the municipal administrative proceeding would have been given collateral estoppel effect under California law.

The California Supreme Court has established a two-part test to evaluate the preclusive effect to accord administrative agency determinations. *People v. Sims*, 32 Cal.3d 468, 186 Cal.Rptr. 77, 651 P.2d 321 (1982). The first part of the *Sims* test employs the standard the United States Supreme Court set out in *Utah Construction:* collateral estoppel should be applied "[w]hen an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate." *Utah Construction*, 384 U.S. at 422, 86 S.Ct. at 1560, quoted in *Sims*, 32 Cal.3d at 479, 186 Cal.Rptr. at 83, 651 P.2d at 327–28. The second part entails traditional collateral estoppel criteria, barring relitigation of an issue if:

(1) the issue necessarily decided at the previous [proceeding] is identical to the one which is sought to be relitigated; (2) the previous [proceeding] resulted in a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the prior [proceeding].

*Id.* at 484, 186 Cal.Rptr. at 87, 651 P.2d at 331 (quoting *People v. Taylor*, 12 Cal.3d 686, 691, 117 Cal.Rptr. 70, 73, 527 P.2d 622, 625 (1974)).

In *Sims*, the California Supreme Court found that a California Department of So-

1. The Ninth Circuit found in *Mack* that, as a matter of federal common law, preclusion did not apply because the administrative hearing failed to meet the *Utah Construction* threshold. 798 F.2d at 1283–84. The court thus found it unnecessary to reach California law. *Id.* at 1283 n. 4. In *Plaine*, this court found that because California law incorporates the *Utah Construction* standard, no scrutiny beyond California law is necessary. 797 F.2d at 719 n. 13.

cial Services hearing had preclusive effect in a subsequent criminal prosecution for welfare fraud because it was "a judicial-like adversary proceeding" conducted pursuant to Cal.Welf. & Inst.Code § 10950 (West 1980). 32 Cal.3d at 479, 186 Cal. Rptr. at 83, 651 P.2d at 328. Similarly, in the present case, Eilrich was afforded a 14-day proceeding resembling a trial, documented by an eleven-volume transcript. Under Cal.Gov't Code § 11513, both sides were entitled to call, examine and cross-examine witnesses under oath or affirmation. At the hearing, both parties were represented by counsel, twenty-one sworn witnesses testified, subpoenas were issued, and both parties presented oral argument and written memoranda. Both sides briefed the first amendment issue, the hearing officer considered these arguments and applied the appropriate legal standards to the facts surrounding Eilrich's statements and discharge. In addition, because the hearing officer applied an established rule to specific existing facts rather than establishing a rule of law applicable to future cases, he acted in a judicial capacity. *See Sims,* 32 Cal.3d at 480, 186 Cal.Rptr. at 84, 651 P.2d at 328; *Mack,* 798 F.2d at 1283. Clearly, Eilrich had an adequate opportunity to litigate his first amendment claim with these procedures. *See Plaine,* 797 F.2d at 720 (upholding application of collateral estoppel to a similar California Corporations Commissioner's determination under the *Sims* test).

The facts of this case are clearly distinguishable from those in *Mack,* where we could not determine from the record whether any evidence on the plaintiff's age discrimination claim had even been presented. 798 F.2d at 1283–84. Thus, the determination satisfies the *Utah Construction* stan-

dard because the hearing officer acted in a judicial capacity and the parties had adequate opportunity to litigate the first amendment issue. The traditional collateral estoppel criteria applied in the second part of the *Sims* test were also met because Eilrich was a party to the prior proceeding and the officer made a determination on the merits of the first amendment claim that became final when Eilrich failed to seek judicial review in the California courts.[2]

Eilrich also contends that the *Sims* test was not met because the issue determined in the administrative proceeding is not identical to that involved in his § 1983 claim. *See Levi Strauss & Co. v. Blue Bell, Inc.,* 778 F.2d 1352, 1357 (9th Cir.1985) (en banc); *Amador v. Unemployment Ins. Appeals Bd.,* 35 Cal.3d 671, 684–85, 200 Cal.Rptr. 298, 306, 677 P.2d 224, 232 (1984). Eilrich attempts to avoid collateral estoppel by deleting several of the statements considered by the hearing officer from the § 1983 action and substituting one statement for a similar one considered in the administrative hearing. He argues that because the hearing officer considered a slightly different substantive set of statements, and because each statement was not separately analyzed, the district court could not rely on the hearing officer's finding that all the statements were not protected by the first amendment.

However, the six statements are all part of one speech and the legal standard required the hearing officer to applying a balancing test, looking at the circumstances surrounding Eilrich's speech and discharge. The hearing officer thoroughly examined each of the six statements separately, listing the reasons he found them unprotected by the first amendment. The

**2.** Eilrich argues that *Utah Construction* and *Elliott* apply preclusive effect only to administrative determinations of disputed *facts.* Because the parties stipulated that he was fired solely for the reasons contained in the Notice of Termination, he argues that no factual disputes are involved. The Court in *Elliott* does not articulate a distinction between issues of fact and law in applying preclusion principles to administrative proceedings. Further, collateral estoppel has been expanded in recent decades to preclude determinations of law as well as of fact. 4 K. Davis, *Administrative Law* § 21, at 51

(2d ed. 1983). The first restatement of judgments distinguished between questions of law and questions of fact but the second restatement expressly applies collateral estoppel to both types of questions. *See* Restatement (First) of Judgments §§ 68, 70 (1942); Restatement (Second) of Judgments § 27 (1982). Similarly, California law does not distinguish between determinations of fact and law in evaluating administrative proceedings for preclusion purposes except in narrow circumstances which are not applicable here. *See infra* p. 635.

hearing officer conducted the same balancing test which would be applied to Eilrich's claims in a § 1983 action and found the City's interests in maintaining efficient public service by minimizing disruption and preventing the undermining of the police chief's authority outweighed Eilrich's interest in expression on matters of public concern. *See, e.g., Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *Franklin v. Leland Stanford Jr. Univ.,* 172 Cal.App.3d 322, 218 Cal.Rptr. 228 (1985). Thus, the hearing officer and the district court had the same expressive conduct before them and the hearing officer actually and necessarily decided the identical issue. *See Sims,* 32 Cal.3d at 485, 186 Cal.Rptr. at 87, 651 P.2d at 332.

Eilrich's argument must fail because it would allow a party to evade collateral estoppel in a subsequent action by merely changing the statements to be considered, although they arise from the same factual circumstances and the legal standard requires an overall examination of those circumstances. Condoning such strategic evasion would thwart the policies underlying collateral estoppel: "(1) to promote judicial economy by minimizing repetitive litigation; (2) to prevent inconsistent judgments which undermine the integrity of the judicial system; and (3) to provide repose by preventing a person from being harassed by vexatious litigation." *Taylor,* 12 Cal.3d at 695, 117 Cal.Rptr. at 76, 527 P.2d at 628.

California courts have created an exception to collateral estoppel to allow relitigation of a question of law when injustice would otherwise result. *See, e.g., Rutherford v. State,* 188 Cal.App.3d 1267, 1285, 233 Cal.Rptr. 781, 790–91 (1987) (unclear if issue was actually resolved where appellate department reversed without an opinion); Restatement (Second) of Judgments § 28 (1982). However, this court has upheld a California court's refusal to apply this exception in circumstances similar to those of Eilrich. *Clark v. Yosemite Community College Dist.,* 785 F.2d 781, 788 (9th Cir. 1986). In *Clark,* claim preclusion applied to bar federal court litigation of a discharged professor's § 1983 claim after a state court judgment. This court did not

find manifest injustice in the situation or a legal issue of public importance to justify relitigation in the primarily factual determination upholding the professor's discharge for expressive conduct. *See also Carmel Valley Fire Protection Dist. v. State,* 190 Cal.App.3d 521, 234 Cal.Rptr. 795, 803 (1987); *Ang,* 97 Cal.App.3d at 679, 159 Cal. Rptr. at 59.

Allowing relitigation of Eilrich's claims would encourage litigants to forego state court review to receive federal review in § 1983 actions. This result would contravene the dictate of *Elliott,* where five Justices determined that § 1983 claims did not necessarily mandate a federal forum.

We affirm because the district court did not abuse its discretion in finding that the administrative hearing would be accorded preclusive effect in California courts.

AFFIRMED.