Jim A. ROBERTS, Plaintiff,

v.

THE LAS VEGAS VALLEY WATER
DISTRICT, et al., Defendants.

No. CV–S–92–1062–PMP (RLH).

United States District Court,
D. Nevada.

April 18, 1994.

Lynn R. Shoen, Las Vegas, NV, for plaintiff.

Gregory E. Smith, Keith E. Kizer, Smith & Kotchka, Las Vegas, NV, for defendants.

## ORDER

PRO, District Judge.

Before the Court is a Motion for Summary Judgment (# 22) filed by Defendants Las Vegas Valley Water District ("District"), Patricia Mulroy ("Mulroy") and Patricia Maxwell ("Maxwell") on January 20, 1994. Plaintiff Jim A. Roberts ("Roberts") filed his Opposition (# 24) on February 7, 1994. Defendants filed their Reply (# 27) on March 28, 1994.

I. Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The party moving for summary judgment has the initial burden of showing the absence of a genuine issue of material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir.1982). Once the movant's burden is met by presenting evidence which, if uncontroverted, would entitle the movant to a directed verdict at trial, the burden then shifts to the respondent to set forth specific facts demonstrating that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). If the factual context makes the respondent's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *California Arch. Bldg. Prod. v. Franciscan Ceramics*, 818 F.2d 1466, 1468 (9th Cir.1987), *cert. denied*, 484 U.S. 1006, 108 S.Ct. 699, 98 L.Ed.2d 650 (1988).

If the party seeking summary judgment meets this burden, then summary judgment will be granted unless there is significant probative evidence tending to support the opponent's legal theory. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968); *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270 (9th Cir. 1979). Parties seeking to defeat summary judgment cannot stand on their pleadings once the movant has submitted affidavits or other similar materials. Affidavits that do not affirmatively demonstrate personal knowledge are insufficient. *British Airways*

*Bd. v. Boeing Co.,* 585 F.2d 946, 952 (9th Cir.1978), *cert. denied,* 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). Likewise, "legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment." *Id.*

A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth. *See Admiralty Fund v. Hugh Johnson & Co.,* 677 F.2d 1301, 1305–06 (9th Cir. 1982); *Admiralty Fund v. Jones,* 677 F.2d 1289, 1293 (9th Cir.1982).

All facts and inferences drawn must be viewed in the light most favorable to the responding party when determining whether a genuine issue of material fact exists for summary judgment purposes. *Poller v. CBS, Inc.,* 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). After drawing inferences favorable to the respondent, summary judgment will be granted only if all reasonable inferences defeat the respondent's claims. *Admiralty Fund v. Tabor,* 677 F.2d 1297, 1298 (9th Cir.1982).

The trilogy of Supreme Court cases cited above establishes that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp.,* 477 U.S. at 327, 106 S.Ct. at 2555 (quoting Fed.R.Civ.P. 1). *See also Avia Group Int'l, Inc. v. L.A. Gear Cal.,* 853 F.2d 1557, 1560 (Fed.Cir.1988).

## II. Facts

Defendant Las Vegas Valley Water District employed Plaintiff Roberts from 1969 until his termination on June 12, 1992. Specifically, Roberts worked as Support Manager in the Treatment and Transmission Department since being transferred to that Department in 1987. According to Defendants, Joe Monscvitz ("Monscvitz") has managed the Treatment and Transmission Department since 1971, and he reports to Water System Deputy General Manager Robert Sullivan. In turn, Sullivan reports to District General

Manager Defendant Mulroy. Defendant Maxwell is the Director of Human Resources and staff services for the District.

According to Defendants, in 1991, Roberts began to send internal correspondence to other departments, in which he criticized certain District employees, practices and policies. Monscvitz, Roberts' supervisor, attempted to curb this practice by requiring that he give his prior approval to all interdepartmental correspondence and correspondence written by Roberts as a management employee. Monscvitz warned Roberts that a failure to abide by this policy could result in discipline, up to and including termination from employment. According to Defendants, Roberts responded, in writing, that he would not follow this policy, and in fact did not follow it on two subsequent occasions.

Additionally, the record reflects repeated correspondence between Roberts and Clark County Commissioner Bruce Woodbury ("Woodbury") beginning with a letter dated May 13, 1991, in which Roberts discussed his dissatisfaction with specific District policies and practices.[1] *See, e.g.,* Exhibits 7 & 9, attached to Plaintiff's Opposition (# 24) (copies of Roberts' letters to Commissioner Woodbury).

In a July 26, 1991, internal memorandum, Monscvitz told Roberts that Roberts' communication with Woodbury was a breach of the chain of command, and that by such communication, Roberts was "doing an injustice to the Treatment and Transmission Department and destroying a team that we have developed over the years ..." In this memorandum, Monscvitz also objected to the fact that Roberts signed his communications to Woodbury using his title of Support Manager, as Monscvitz believed this conveyed the erroneous impression that Roberts was representing the entire Treatment and Transmission Department, rather than just himself. Monscvitz ended the memo by noting that "it is evident that you do not wish to participate as a team member any longer."

In a subsequent memorandum, dated August 22, 1991, Monscvitz confirmed a conver-

---

1. Clark County Commissioners such as Commissioner Woodbury comprise the District's Board of Directors. *See* 1947 Statutes of Nevada, Chapter 167, at Section 5.1.

sation between himself and Roberts, and ordered that "no inter-department correspondence shall leave the Treatment and Transmission Department under the Support Manager's signature. Correspondence that is necessary is to be prepared by the Support Manager for the Director's signature, inasmuch as you can no longer be trusted to maintain effective working relationships with other Departments." This memo also commanded Roberts to "suspend all letter-writing to Commissioner Woodbury that concerns the Treatment and Transmission Department. Communication on policy matters will be made through official channels." This memo threatened discipline if Roberts failed to comply with its mandates.

On October 16, 1991, Monscvitz suspended Roberts for five days without pay, citing Roberts' written refusal to follow Monscvitz's command, contained in his August 22, 1991, memorandum, that Roberts cease interdepartmental communication. The memorandum suspending Roberts also warned that any further violation of District policies or of Monscvitz's directives would result in termination.[2]

On May 22, 1992, Monscvitz sent Roberts a Notice of Intent to Terminate ("Notice"). According to Defendants, Monscvitz directed Roberts and a co-worker, Bill DiTrapani ("DiTrapani"), to attend a workshop held by the Nevada Division of Environmental Protection on May 7, 1992. The workshop was being held to discuss proposed regulations concerning facilities that deal with certain quantities of highly hazardous materials. Roberts' position is that he made reservations to go to this workshop, but that on the morning of May 7, 1992, he discovered that Monscvitz also had planned to go, and that he decided that since Monscvitz would be there, he did not have to attend. Roberts also stated that on two occasions, he checked with Monscvitz, and that on both of those occasions, Monscvitz indicated that Roberts was not required to attend the workshop.

Monscvitz's Notice of Intent to Terminate cites Roberts' intentional absence from the workshop as insubordination, and notes his prior suspension. The Notice placed Roberts on administrative leave with pay pending final action, and restricted him to the public areas of the Treatment Plant and Water District central office. It also notified Roberts of his right to have a pre-termination hearing pursuant to District Procedure No. 110, and that if he wished to have such a hearing, he had to request it within two days of the date he received the notice.

On May 26, 1992, Roberts sent Monscvitz two documents. The first was a request for an appeal hearing, so that Roberts could appeal his October 16, 1991, suspension. The second was a Request for Pre-Termination hearing, in accordance with Las Vegas Valley Water District Procedure No. 110. On June 5, 1992, Roberts sent Monscvitz a "Rebuttal of Charge" letter, in which Roberts discussed the charge against him, his rebuttal, and the background leading up to the Notice of Intent to Terminate. On June 10, 1992, Monscvitz sent a written reply to Roberts' rebuttal.

William P. Beko, a Nevada state senior judge, was employed by the District to preside over pre-termination proceedings, and as such, on September 29 and 30, 1992, he conducted Roberts' pre-termination hearing. Present at this hearing were Roberts and his counsel, Defendant Maxwell, and a Deputy Clark County District Attorney. Hearing Officer Beko issued a decision on October 5, 1992, dismissing Roberts' appeal. Beko rejected Roberts' arguments that he was fired in retaliation for his disclosures of allegedly improper District actions, and found that Roberts' complaint about District policies were merely "disagreement with management policies." *Decision of Hearing Officer* at 6, attached as Exhibit F to Defendants' Motion for Summary Judgment (# 22). Beko found that Roberts' refusal to attend the May 7, 1992, workshop was an independent cause for termination, as "none of the modern theories protecting employees

---

**2.** Although the memorandum suspending Roberts made reference to Roberts' general refusal to follow Monscvitz's instructions articulated in Monscvitz's August 22, 1991, memorandum, this suspension memorandum indicated that it was Roberts' refusal to follow instructions regarding interdepartmental communication, not his instructions to cease writing to Commissioner Woodbury, that resulted in Roberts' suspension.

against reprisal would condone a direct refusal to perform a management duty." *Id.*

Roberts thereafter applied to the Nevada Employment Security Department for unemployment insurance. In holding Roberts eligible for benefits, that Department noted that although he had been discharged for insubordination in failing to attend the workshop, his employer permitted him to work for an additional two weeks after the date he missed the workshop, even though the employer knew immediately that he had not attended the workshop. Because of this, the Department concluded that Roberts had been terminated "for reasons of convenience of the employer," and that "misconduct has not been established." *See Notice of Determination or Redetermination,* attached as Exhibit 40 to Plaintiff's Opposition (# 24).

On December 21, 1993, Roberts filed the instant suit. Count I states a cause of action under 42 U.S.C. §§ 1983 for deprivation of Roberts' civil rights. Count II claims a denial of Roberts' substantive due process rights. Counts III–V are pendent state law claims.

### III. Analysis

Defendants present several arguments in support of their Motion for Summary Judgment. First, Defendants contend that Roberts' entire case is precluded under the doctrine of res judicata. Defendants assert that res judicata applies to administrative proceedings and a subsequent court action. Second, Defendants argue that even if the Court does not find that res judicata applies to bar Roberts' entire action, Roberts should be collaterally estopped from alleging facts that are necessary for him to succeed in the present suit. Third, Defendants argue that there has been no showing that Defendants Mulroy and Maxwell terminated Roberts; thus, Defendants assert that summary judgment should be entered in favor of those two individual Defendants. Fourth, Defendants argue that although Roberts attempts to impose liability on the District, he has alleged no policy or practice adopted by the District's final policymaking officials to harass or terminate him, and therefore, Roberts cannot recover against the District under § 1983. Fifth, Defendants contend that summary judgment on Roberts' substantive due process claim is warranted because Roberts has not alleged the violation of a fundamental right.

Both Count I and Count II of Plaintiff's Complaint, the only Federal causes of action in Roberts' Complaint, appear to state substantive and procedural due process claims. For example, in Count I, Roberts alleges that the District terminated him without good cause, and that in violation of the Employee Working Rules and Guidelines for Administration of Discipline, the District terminated him without giving him thirty days notice. Count II is labelled "Deprivation of Substantive Due Process," and alleges that the District failed to follow its own rules, and also that Defendants had no just cause for terminating Roberts. The allegations based around failure to follow procedures and give adequate *notice are traditionally procedural* due process claims, whereas the allegation that Defendants terminated Roberts without good cause is analyzed as a substantive due process claim.[3]

#### A. Procedural Due Process

The Court finds that the procedures actually followed by the District complied with the requirements of procedural due process as set forth by the Supreme Court in *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1984), and the Ninth Circuit in *Matthews v. Harney County,* 819 F.2d 889 (9th Cir.1987).

 A failure to follow internal administrative termination procedures is not in and of itself a due process violation.[4] The Court

---

**3.** Roberts' Complaint alleges that this Court has jurisdiction under, *inter alia,* 42 U.S.C. § 2000e, or Title VII as it is more commonly known. Title VII deals with invidious barriers to employment that result from racial or other impermissible classifications. Roberts does not allege that he was fired because of any classification recognized and protected in Title VII. *See* 42 U.S.C. §§ 2000e–2, 2000e–3.

**4.** *See, e.g., Walker v. Sumner,* 14 F.3d 1415, 1420 (9th Cir.1994) (adopting the First Circuit's reasoning in *Rogers v. Okin,* 738 F.2d 1, 8 (1st Cir.1984), that "if state procedures rise above the floor set by the due process clause, a state could fail to follow its own procedures yet still provide sufficient process to survive constitutional scrutiny").

in *Loudermill* noted that a pre-termination hearing in the public employment context "need not definitively resolve the propriety of the charge." *Loudermill,* 470 U.S. at 545, 105 S.Ct. at 1495. All that is required of the pre-termination hearing is that the hearing determine whether "there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Id.* at 546, 105 S.Ct. at 1495.

> The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story. To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee.

*Id.* The Court noted that only one of its prior cases, *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), required a "full adversarial evidentiary hearing prior to adverse governmental action." *Loudermill,* 470 U.S. at 545, 105 S.Ct. at 1495. Both the *Goldberg* and *Loudermill* Courts, however, recognized that the *Goldberg* case "presented significantly different considerations than are present in the context of public employment." *Id.*

■ In the present case, it is undisputed that through Monscvitz's May 22, 1992, Notice of Intent to Terminate, the District provided Roberts with written notification and full explanation of the charges against him. Additionally, Roberts' Pre–Termination—Rebuttal of Charge (attached as Exhibit 30 to Defendants' Opposition (# 24)), and his participation in the pre-termination hearing, constituted two opportunities to present his response. Finally, although not constitutionally required, the pre-termination hearing held by the District in front of Hearing Officer William P. Beko contained most, if not all, of the safeguards afforded by a full adversarial proceeding. These safeguards included representation by counsel, a right of cross examination, the presence of an experienced judicial officer presiding over the proceedings, and according to the Defendants, application of the rules of evidence and the opportunity for legal argument. Thus, the

Court finds that the procedures actually followed by the District in this case more than adequately complied with the Due Process clause in the Constitution.[5]

### B. Substantive Due Process

■ "The Ninth Circuit has not considered whether a discharged public employee can maintain a substantive due process claim based upon arbitrary and capricious discharge from employment." *Portman v. County of Santa Clara,* 995 F.2d 898, 908 (1993). Even if this Court assumes that Roberts could maintain such a cause of action, it finds that there exists no genuine issue of material fact to preclude a finding that Roberts was not terminated in an arbitrary and capricious manner.

In reaching this conclusion, the Court gives collateral estoppel effect to Hearing Officer Beko's finding that "Roberts' unexcused failure to represent his department and the District at a meeting where important matters involving the storage and use of hazardous materials, resulted in the decision by his immediate supervisor to recommend termination." *Decision of Hearing Officer* at 5, attached as Exhibit F to Defendants' Motion for Summary Judgment (# 22). The Court also gives preclusive effect to Beko's conclusion that "it is clear that Mr. Roberts' flagrant refusal to attend a meeting which he had been instructed to attend, under all of the circumstances present in this appeal, would have been, and was, a valid basis for termination.... His defiance of other orders given by his supervisor add credence to his apparent recent adoption of the theory that he was beyond supervision by higher authority." *Id.* at 6.

■ It is proper for this Court to give collateral estoppel effect to the administrative decision in this case. *See Jackson v. Gates,* 975 F.2d 648, 656 (9th Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 2996, 125 L.Ed.2d 690 (1993); *Eilrich v. Remas,* 839 F.2d 630, 632–34 (9th Cir.), *cert. denied,* 488 U.S. 819, 109 S.Ct. 60, 102 L.Ed.2d 38 (1988); *Plaine v. McCabe,* 797 F.2d 713, 718–21 (9th

---

**5.** Additionally, the Court notes that Roberts could have chosen to utilize the state court mechanism for challenging the Hearing Officer's decision, provided in N.R.S. § 233B.130.

Cir.1986). *Jackson* notes that "federal courts will accord collateral estoppel to municipal administrative hearings that have sufficient judicial safeguards." *Jackson*, 975 F.2d at 656. That court also stated that "the factors used to determine the existence of these safeguards are whether an administrative agency acted in a judicial capacity and resolved disputed issues of fact properly before it which the parties had an adequate opportunity to litigate, and whether the general collateral estoppel criteria apply." *Id.* at n. 8. This standard applies whether or not the administrative decision has been reviewed by a state court. *Eilrich*, 839 F.2d at 632–33.

*Eilrich* and *Plaine* suggest that federal courts must determine whether the state court would give preclusive effect to the administrative decision. *See Plaine*, 797 F.2d at 719 ("The federal court must carefully review the state administrative proceeding to ensure that, at a minimum, it meets the state's own criteria necessary to require a court of that state to give preclusive effect to the state agency's decisions"). Nevada has adopted a general rule of administrative res judicata, *Britton v. City of North Las Vegas*, 106 Nev. 690, 799 P.2d 568, 569 (1990),[6] and although it has not specifically adopted the standards set forth in *United States v. Utah Construction and Mining Co.*, 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966), it has cited that case with approval. *See id.*

Roberts argues, however, that Nevada has recognized an exception to administrative res judicata for employment discrimination cases. The *Britton* court notes the existence of such an exception in other jurisdictions, but did not have to decide whether to recognize such an exception because no allegations of employment discrimination were made in that case. *See Britton*, 799 P.2d at 569 (cit-

ing *Hahn v. Arbat Systems, Ltd.*, 200 N.J.Super. 266, 491 A.2d 58, 59 (1985) and *Rosenfeld v. Dep't. of Army*, 769 F.2d 237 (4th Cir.1985)).

This Court finds that even if *Britton* adopted an exception for employment discrimination cases, Roberts' allegations do not call for the application of such an exception. Although Roberts' claims arise in the context of a dispute over termination from his employment, he does not allege that he was the victim of discrimination, as that term is commonly used in Title VII litigation. Indeed, this Court has already noted that his Complaint is deficient to the extent that it attempts to invoke jurisdiction pursuant to 42 U.S.C. § 2000e. Both the *Hahn* and *Rosenfeld* decisions cited by the Nevada Supreme Court in *Britton* recognize the employment discrimination exception in the context of allegations of discrimination on bases prohibited by Title VII.[7] Thus, the Court finds that even if Nevada has adopted an exception for employment discrimination cases to the application of administrative res judicata, such exception is not applicable here. The Court further finds that under the facts of the instant case, Nevada would give preclusive effect to Hearing Officer Beko's findings.[8]

In its discussion of procedural due process, this Court has already found that the administrative agency "acted in a judicial capacity and resolved disputed issues of fact properly before it which the parties had an adequate opportunity to litigate." Thus, the Court is left to consider whether the general collateral estoppel criteria apply. Both *Britton*, 799 P.2d at 570, and *Campbell*, 827 P.2d at 835, discuss the collateral estoppel criteria. To apply collateral estoppel under Nevada law, (1) the issue decided in the prior adjudi-

---

**6.** *See also Campbell v. State, Dep't of Taxation*, 108 Nev. 215, 827 P.2d 833, 835 (1992).

**7.** The Supreme Court's decision in *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 466–67 & n. 6, 102 S.Ct. 1883, 1889–90, & n. 6, 72 L.Ed.2d 262 (1982) recognized an exception to its rule of issue preclusion for Title VII cases. The Court reaffirmed the exception for Title VII cases in *University of Tennessee v. Elliott*, 478 U.S. 788, 796, 106 S.Ct. 3220, 3225, 92 L.Ed.2d 635 (1986), but reversed a Sixth Circuit decision

which extended that exception to § 1983 actions. *Id.* at 799, 106 S.Ct. at 3226.

**8.** *Britton* notes that "res judicata does not apply to factual determinations of the employment security department," *Britton*, 799 P.2d at 569 n. 1, thus rendering unsuccessful Roberts' argument that the finding of the employment security department that "misconduct has not been established" raises a genuine issue of material fact precluding an award of summary judgment.

cation must be identical to the issue presented in the present action, (2) there must be a final decision on the merits, and (3) the party against whom collateral estoppel is asserted must be the same party in the prior adjudication, or in privity with that party. *See, e.g., Horvath v. Gladstone,* 97 Nev. 594, 637 P.2d 531, 533 (1981).

■ The Court finds that the collateral estoppel criteria are satisfied in this case. First, the issue given preclusive effect in this litigation, namely, the reason for Roberts' termination and whether Roberts was terminated in an arbitrary and capricious manner, was one of the issues decided by Hearing Officer Beko in the administrative proceeding. Second, Beko issued a final written decision. Third, the parties in the administrative proceeding are identical to the parties in this litigation. Thus, collateral estoppel is appropriate, and this Court gives preclusive effect to Hearing Officer Beko's conclusion that Roberts was not arbitrarily and capriciously terminated.

■ If a federal claim against a party is dismissed before trial, the pendent state law claims should also be dismissed. *Schultz v. Sundberg,* 759 F.2d 714, 718 (9th Cir.1985); *Jones v. Community Redevelopment Agency,* 733 F.2d 646 (9th Cir.1984). Both of the federal claims sought by Plaintiff under the present Complaint have been summarily adjudicated. As such, the remaining state law claims presented should be dismissed without prejudice. *Copeland v. Desert Inn Hotel,* 99 Nev. 823, 673 P.2d 490, 492 (1983).

IT IS THEREFORE ORDERED THAT Defendants' Motion for Summary Judgment (# 22) is granted as to Counts I and II, and the Clerk of Court shall forthwith enter Judgment in favor of Defendants and against Plaintiff as to Counts I and II.

IT IS FURTHER ORDERED THAT Counts III, IV and V in Plaintiff's Complaint (# 1) are dismissed without prejudice.