175 F.3d 692
 99 Cal. Daily Op. Serv. 2990, 1999 Daily
Journal D.A.R. 3879
Mark J. WEHRLI, Plaintiff-Appellant,
v.
COUNTY OF ORANGE; Michael S. Carona, individually and in
his official capacity as Orange County Marshal; Don Spears,
individually and in his official capacity as Captain of the
Orange County Marshal, Defendants-Appellees.
 No. 97-55040.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted May 4, 1998.
Decided April 27, 1999.
 
 Michael P. Stone, Muna Busailah, Marc Berger, Michael P. Stone, Pasadena, California, for the plaintiff-appellant.
 William F. Bernard, Lynberg & Watkins, Santa Ana, California, for the defendants-appellees.
 Appeal from the United States District Court for the Central District of California; Gary L. Taylor, District Judge, Presiding. D.C. No. CV-95-00042-GLT.
 Before: CANBY and KLEINFELD, Circuit Judges, and SCHWARZER,[1] District Judge.
 Opinion by Judge CANBY; Dissent by Judge KLEINFELD.
 CANBY, Circuit Judge:
 
 
 1
 Plaintiff-appellant Mark Wehrli brought this action pursuant to 42 U.S.C. § 1983, claiming that certain actions of his employer, Orange County, California, violated his federal constitutional rights. The issue for decision on this appeal is whether an earlier state administrative adjudication of Wehrli's claim, which he voluntarily precipitated, is to be given preclusive effect in the present proceedings. We conclude that the administrative ruling is not preclusive, and we accordingly reverse the district court's summary judgment in favor of the County.
 
 BACKGROUND
 
 2
 Wehrli, a Deputy Marshal at the Orange County courthouse, suffered an off-duty epileptic seizure, and so advised his employer. A county physician restricted Wehrli to light duty for the next five years, the period following an initial seizure during which there remains a significant risk of recurrence. The County informed Wehrli that it had no light duty positions for a Deputy Marshal and instead offered him a clerical position. The County conditioned this offer on Wehrli's waiver of his right to challenge his removal from the Deputy Marshal position, and the waiver of any right to eventual reemployment as a Deputy Marshall. Wehrli refused to waive these rights and was discharged.
 
 
 3
 Wehrli then filed this 42 U.S.C. § 1983 action in district court, challenging his discharge as a violation of due process. Shortly thereafter, all proceedings were stayed because of the County's bankruptcy. During the stay, Wehrli opted for an administrative hearing on his claims, as provided by the Marshal's Court Personnel Rules and Regulations. A municipal court judge presided over the hearing. Wehrli was represented by an attorney and was allowed to present evidence and cross-examine opposing witnesses. The hearing was not recorded, however, and the hearing rules provided that "the decision of the panel judge shall be final and binding on all parties and shall not be subject to judicial review."[2]
 
 
 4
 The hearing officer found that, in light of the updated medical record, particularly new information about the effect of medication on Wehrli's condition, Wehrli was fit to serve as a Deputy Marshal. He therefore reinstated him to that position. The hearing officer also found, however, that Wehrli had failed to present key information from his own physician to the County. He determined that "Deputy Wehrli's inaction in providing information to [the County] was a substantial factor leading to his termination." He concluded that the County acted reasonably in discharging Wehrli and that Wehrli was not entitled to backpay. The hearing officer also found that the County did not violate any of Wehrli's rights by conditioning its offer of a clerical position on Wehrli's waiver of his appeal rights.
 
 
 5
 When Orange County emerged from its bankruptcy, Wehrli moved to reactivate his federal action. The district court noted that the administrative hearing officer had "addressed the same issues in his decision that are now before the Court." It found that the administrative hearing had adequate judicial safeguards, and that, by opting for such a hearing under its applicable rules, Wehrli had waived his right to judicial review of that decision. The district court concluded that Wehrli was collaterally estopped from relitigating the issues underlying his § 1983 claims. Wehrli appeals.
 
 DISCUSSION
 
 6
 Is the State Administrative Proceeding Entitled to Preclusive Effect?
 
 
 7
 Wehrli's principal challenge to the district court's decision is a relatively narrow one. He argues that the district court erred in giving collateral estoppel effect to the state administrative decision because that decision was not subject to judicial review. We conclude that WEHRLI is correct.
 
 
 8
 There is no doubt that, as a general matter, a state administrative decision can have preclusive effect upon a federal § 1983 claim. The Supreme Court so held in University of Tennessee v. Elliott, 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986). That case, too, dealt with a state administrative decision that had not been subjected to judicial review, but such review had been available under state law; the plaintiff had simply failed to avail himself of it. In finding the administrative decision to be preclusive, the Supreme Court pointed out that the full faith and credit statute, 28 U.S.C. § 1738, does not require federal courts to give force to unreviewed state administrative proceedings. Id. at 794, 106 S.Ct. 3220. The Court added, however, that "we have frequently fashioned federal common-law rules of preclusion in the absence of a governing statute." Id. The Court then held, with regard to preclusion of the plaintiff's § 1983 claim:
 
 
 9
 [W]hen a state agency "acting in a judicial capacity ... resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate," [United States v.] Utah Construction & Mining Co., [384 U.S. 394,] 422 [86 S.Ct. 1545, 16 L.Ed.2d 642 (1966)], federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State courts.
 
 
 10
 Id. at 799, 106 S.Ct. 3220 (footnote omitted). We have held that this same principle applies to legal as well as factual rulings of an administrative body. Miller v. County of Santa Cruz, 39 F.3d 1030, 1032-33 (9th Cir.1994).
 
 
 11
 Wehrli argues that the unavailability of judicial review means that he did not have "an adequate opportunity to litigate." There is sound support for his view. Although the Supreme Court in Elliott did not elaborate on the essentials of an "adequate opportunity," it quoted Utah Construction for the requirement. Utah Construction gave preclusive effect to an administrative decision with the observation that "both parties had a full and fair opportunity to argue their version of the facts and an opportunity to seek court review of any adverse findings." Utah Construction, 384 U.S. at 422, 86 S.Ct. 1545. Our cases, too, suggest that the availability of judicial review is a crucial factor in determining preclusive effect. In Plaine v. McCabe, 797 F.2d 713 (9th Cir.1986), we accorded preclusive effect where judicial review of the administrative adjudication was available but unused, stating:
 
 
 12
 If an adequate opportunity for review is available, a losing party cannot obstruct the preclusive use of the state administrative decision simply by foregoing her right to appeal.
 
 
 13
 Id. at 719, n. 12 (emphasis added); see also Eilrich v. Remas, 839 F.2d 630 (9th Cir.1988). Similarly, we held in Misischia v. Pirie, 60 F.3d 626 (9th Cir.1995), that a plaintiff had had an "adequate opportunity to litigate" because "[h]e had an opportunity, which he chose not to take, for judicial review, and even for the presentation of evidence in the reviewing court to demonstrate procedural irregularities by the board." Id. at 630.
 
 
 14
 In Miller, 39 F.3d at 1038, we rejected a claim that preclusive effect must be denied because the administrative decisionmakers were not necessarily lawyers, stating that "the availability of judicial review, even if not always determinative, is of critical importance here." Id. We do not draw from this statement an implication that, when the decisionmaker is a lawyer or judge, judicial review is unnecessary for preclusive effect. That issue was not before us in Miller, and the rationale of both Plaine and Eilrich militate in favor of the availability of judicial review as a requisite for preclusive effect. Certainly the fact that Wehrli's hearing officer was a judge adds to the judicial character of the proceedings and the likelihood of a fair hearing, but individual hearing officers are capable of occasional arbitrary action even if they are judges.[3] Indeed, the Restatement, which California generally follows in these matters, see Anderson-Cottonwood Disposal v. W.C.A.B., 135 Cal.App.3d 326, 185 Cal.Rptr. 336, 340 (App.1982), flatly denies preclusive effect to a judicial judgment when "[t]he party against whom preclusion is sought could not, as a matter of law, have obtained review of the judgment in the initial action." Restatement, Second, Judgments § 28(1). The reasons for this proscription apply to Wehrli; with no administrative record and no judicial review, Wehrli would have no way of correcting arbitrary administrative action if any occurred. We agree, therefore, with the Third Circuit that "the issue of a 'full and fair' opportunity to litigate includes the possibility of a chain of appellate review." Crossroads Cogeneration v. Orange & Rockland Utilities, Inc., 159 F.3d 129, 137 (3d Cir.1998) (construing similar New York law); see also Convalescent Ctr. v. Dept. of Income Maintenance, 208 Conn. 187, 195-202, 544 A.2d 604, 608-11 (Conn.1988) (holding that access to judicial review is a necessary precondition to administrative collateral estoppel).
 
 
 15
 We do not accept the County's view that Werhli is in the position of one who chose to forego available review. It is true that Werhli was not required to invoke the administrative process, but that will often be the case. The rules of the administrative process themselves foreclosed judicial review; Wehrli had no choice between review or no review. He did not waive judicial review in any sense meaningful for the purposes of res judicata or collateral estoppel. We conclude, therefore, that Wehrli did not have an "adequate opportunity to litigate" his claim in the administrative proceedings, within the meaning of Elliott and Utah Construction. The state administrative decision is therefore not entitled to preclusive effect as a matter of federal common law.
 
 
 16
 We also point out that Elliott requires federal courts to accord only that preclusive effect that the state would give to its own proceeding. California does give preclusive effect to state administrative decisions, but it does so under the guidance of Utah Construction. See People v. Sims, 32 Cal.3d 468, 479, 186 Cal.Rptr. 77, 651 P.2d 321, 328 (1982); see also Plaine, 797 F.2d at 720. Thus, in giving an agency decision preclusive effect against a county, the California Supreme Court pointed out that one of the factors indicating that the administrative agency had acted in the "judicial capacity" required by Utah Construction was that "the County had both the right to seek a rehearing before the agency and the right to petition for review in superior court." Sims, 32 Cal.3d at 480, 186 Cal.Rptr. 77, 651 P.2d at 328. We have found no California case according res judicata or collateral estoppel effect to an administrative decision for which judicial review was not available.
 
 
 17
 We conclude, therefore, that neither federal nor California law would give preclusive effect, under the doctrines of res judicata or collateral estoppel, to a state administrative proceeding not subject to judicial review.
 
 CONCLUSION
 
 18
 The judgment of the district court is reversed, and the matter is remanded to the district court for further proceedings.
 
 
 19
 REVERSED and REMANDED.
 
 KLEINFELD, Circuit Judge, dissenting:
 
 20
 I respectfully dissent.
 
 
 21
 Wehrli claimed that he was wrongfully fired as a deputy marshal because of his handicap, epilepsy. He wanted to avoid the delay of judicial proceedings, so he elected to pursue a state administrative procedure to obtain a remedy. The procedure is voluntary. Wehrli was free to pursue all his remedies under the law. But by electing to use the administrative procedure, he subjected himself to rules waiving alternative procedures and judicial review. Rule D(8) of the Court Personnel Rules and Regulations said "[t]he decision of the panel judge shall be final and binding on all parties and shall not be subject to judicial review." In cases where the grievance was decided by a judge pursuant to the procedure (a municipal court judge decided this case), Rule D(1) provided that both the person bringing the grievance and the Association of Deputy Marshals of Orange County "relinquish any current or future claim to seek or obtain a remedy through any other court appeal procedures."
 
 
 22
 The hearing officer rendered a split decision. He held that "based on the medical information available to Marshal Carona ... Carona acted reasonably in discharging Plaintiff." But based on newly available medical information, the hearing officer held that Wehrli was entitled to reinstatement. Because the discharge had not been wrongful, Wehrli was not entitled to back pay. Thus Wehrli obtained part of what he sought, reinstatement but no money award.
 
 
 23
 Despite the express provision that by using the administrative provision he would "relinquish any current or future claim to seek or obtain remedy through any other court appeal procedures," Wehrli is here seeking the remedy he relinquished. He argues that were he not permitted to do so, a person in his position "would be caught between Scylla and Charybdis, where they would have to choose between going directly to federal court to seek vindication of their federal rights ..., or exercise their due process right to a grievance procedure...." Well, yes. Wehrli was free to choose, and he made a choice. He could choose between the advantages of the judicial process, appealability, discovery, and perhaps greater accuracy, and the advantages of the special administrative process he elected, speed, economy, and finality.
 
 
 24
 Speed, economy and finality have a lot to recommend them in a case involving a person's job. To some aggrieved employees, it will be worth risking an unappealable mistake to get them. Wehrli, after all, got back to work almost immediately by means of the administrative process of which he now complains. He got fired December 23, 1994, and got his administrative determination reinstating him January 5, 1995, immediately after the holidays. It is hard to imagine that any judicial proceeding could have gotten him working again that fast. If he had lost, he probably could have found another job long before obtaining any relief in judicial proceedings, and gone forward with his career. An aggrieved employee might reasonably elect a remedy that gets his dispute resolved quickly, inexpensively and finally, instead of a slow, expensive remedy with perhaps higher accuracy. It is impossible to have both, because judicial review necessarily entails delay, lack of finality, and expense.
 
 
 25
 Wehrli has now somehow converted his claim, which would ordinarily be under the Americans With Disabilities Act, into a section 1983 claim. His theory seems to be that the County's offer, which Wehrli rejected, of a light duty job if Wehrli would waive his rights to appeal administratively and to a deputy marshal's job, took away a property right he had in his job without due process of law. It is not clear to me that he can avoid the restrictions on ADA remedies by restating his claim under 42 U.S.C. § 1983, but that issue has not been the focus of the arguments raised. The case has been argued in terms of whether the state administrative proceeding is entitled to preclusive effect, which the district judge gave it. I believe that it is, and would affirm.
 
 
 26
 Not a single case that the majority cites holds or even says in dictum what today's majority holds, that state administrative determinations cannot be given preclusive effect if they are not subject to judicial review. All the cases the majority cites for the proposition that "the availability of judicial review is a crucial factor in determining preclusive effect" are cases in which preclusive effect was in fact given. None denied preclusive effect. None said that availability of judicial review was "a crucial factor," as the majority holds. The holding in every one of those cases--University of Tennessee v. Elliott, 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986), Misischia v. Pirie, 60 F.3d 626 (9th Cir.1995), Miller v. County of Santa Cruz, 39 F.3d 1030 (9th Cir.1994), Eilrich v. Remas, 839 F.2d 630 (9th Cir.1988), Plaine v. McCabe, 797 F.2d 713 (9th Cir.1986)--was that preclusive effect should be given to an administrative determination. In every case, judicial review was available, so there was no occasion for deciding whether, were it not available, preclusive effect would still be given. There could therefore be no holding to that effect. And none of the language in the cases amounted even to dictum that availability of judicial review is a prerequisite to preclusive effect.
 
 
 27
 I must concede that there is also no case that I have found holding the contrary, that preclusive effect will be given to an administrative proceeding such as the one in the case at bar despite the lack of availability of judicial review. But I think a fair reading of the precedents suggests that that is the correct result, at least where submission to the administrative proceeding is voluntary. We need not reach the question whether preclusive effect would be given to a mandatory state administrative procedure with no provision for judicial review.
 
 
 28
 The critical cases are United States v. Utah Construction & Mining Co., 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966) and University of Tennessee v. Elliott, 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986). Utah Construction strongly suggests that judicial review of the administrative determination is not a prerequisite for preclusive effect. Though not on all fours, those two cases appear to me to mean that the district court was correct in this case to give preclusive effect to the state administrative determination.
 
 
 29
 In Utah Construction, the Board of Contract Appeals had authority to resolve one kind of dispute, but not another. The Court held that its findings of fact in the kind of dispute within its jurisdiction were binding in a Court of Claims proceeding on disputes outside the Board's jurisdiction. The findings were "final and conclusive" and subject only to very limited judicial review, under the Wunderlich Act. The Court repudiated the notion that res judicata principles did not apply to administrative proceedings, and stated what have come to be known as the "Utah Construction factors":
 
 
 30
 When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose.
 
 
 31
 Id. at 422, 86 S.Ct. 1545. These factors are met in the case at bar. Judicial review is not among the factors the Court specified. The Court did not say that appealability is a critical part of "acting in a judicial capacity" or "adequate opportunity to litigate." Because the fact findings of the Board of Contract Appeals were, as a practical matter, not subject to judicial review, Utah Construction is more consistent with the proposition that judicial reviewability is not essential to "acting in a judicial capacity" or "adequate opportunity to litigate."
 
 
 32
 The Court held that state administrative proceedings have preclusive effect in a federal section 1983 case, in University of Tennessee v. Elliott, 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986), The case at bar, whether it ought to be or not, is a section 1983 case, so Elliott controls unless properly distinguished. The Court held that the state administrative determination could not be given preclusive effect in a Title VII claim, because the federal statute expressly provided that state proceedings were to receive "substantial weight" and Congress did not intend for them to have preclusive as opposed to "substantial" weight. Because of the congressional intent to allow pursuit both of state and federal remedies, the fact that the state proceeding was requested rather than compelled did not matter. Id. at 796, n. 5, 106 S.Ct. 3220.
 
 
 33
 But for section 1983 claims (which is all we have in the case at bar), the Court held that the state proceeding did have preclusive effect. Elliott says that application of Utah Construction to state administrative proceedings "serves the value underlying general principles of collateral estoppel: enforcing repose." Elliott, 478 U.S. at 798, 106 S.Ct. 3220. The Court quoted Davis on Administrative Law with approval, that "a controversy should be resolved once, but not more than once," id. at 798 n. 6, 106 S.Ct. 3220, serving the value of "avoiding the cost and vexation of repetitive litigation and the public's interest in conserving judicial resources." Id. The Court did not mention availability of judicial review, just the Utah Construction factors quoted above, as the prerequisites for preclusive effect of state administrative determinations.
 
 
 34
 Our cases are consistent with the analysis above. Eilrich v. Remas, 839 F.2d 630 (9th Cir.1988), holds that a state administrative determination had to be given preclusive effect under Utah Construction and Elliott even though it had not been judicially reviewed (the appellant had not taken advantage of his opportunity for state judicial review). We listed numerous factors in Eilrich that showed that the state agency was "acting in a judicial capacity" and granted "adequate opportunity to litigate" without mentioning appealability. Likewise in Miller v. County of Santa Cruz, 39 F.3d 1030 (9th Cir.1994), we upheld application of collateral estoppel in a section 1983 case to state administrative determinations, because we had to under Utah Construction, Elliott, and Eilrich. See also Misischia v. Pirie, 60 F.3d 626 (9th Cir.1995), and Plaine v. McCabe, 797 F.2d 713 (9th Cir.1986).
 
 
 35
 The case might be different were the state proceeding an arbitration under a collective bargaining agreement. McDonald v. City of West Branch, 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984), holds that "in a § 1983 action, a federal court should not afford res judicata or collateral estoppel to effect an award in an arbitration proceeding brought pursuant to the terms of a collective bargaining agreement," Id. at 292, 104 S.Ct. 1799, because the arbitrator might not have authority to enforce section 1983, and the arbitrator's expertise pertained to "the law of the shop, not the law of the land." Id. at 290, 104 S.Ct. 1799. But those factors do not apply here. Though the proceeding resembled arbitration in its elective character, speed, and finality, it was not arbitration pursuant to a collective bargaining agreement. It was an administrative proceeding pursuant to court rules. The hearing officer was a state judge, with expertise in "the law of the land" as opposed to the "law of the shop," and was not restricted from enforcing the "law of the land."
 
 
 36
 The case might also be different if the state proceeding was mandatory rather than voluntary. We can leave for another day the question whether a state administrative agency to which a person had to submit his claim, and from which there could be no judicial review, satisfies the "acting in a judicial capacity" and "adequate opportunity to litigate" requirements of Utah Construction. Compare Crossroads Cogeneration v. Orange & Rockland Utilities, Inc., 159 F.3d 129, 137 (3d Cir.1998) (dictum that full and fair opportunity to litigate "includes the possibility of a chain of appellate review") with Ortwein v. Schwab, 410 U.S. 656, 660, 93 S.Ct. 1172, 35 L.Ed.2d 572 (1973) ("due process does not require a State to provide an appellate system"). Whether a right to judicial review might be a prerequisite to "acting in a judicial capacity" and granting an "adequate opportunity to litigate" in some circumstances, it cannot be where a party voluntarily gives up his right to a proceeding subject to judicial review in order to take advantage of a proceeding that necessarily dispenses with judicial review as part of a scheme that affords a quick, cheap, and final remedy. There is no reason to deprive people of the option of quick, cheap final remedies by limiting finality to procedures where judges can review the determinations.
 
 
 
 [1]
 The Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation
 
 
 [2]
 The rules also state that "[i]f the grievance/appeal is decided by a judge, the grievant/appellant and ADMOC relinquish any current or future claim to seek or obtain remedy through any other Court appeal procedures."
 
 
 [3]
 Our statement is not to be taken as implying error by the hearing officer in Wehrli's case; the merits of his decision are not before us