Susan LEONG, Roy Sato, Clyde Keala Irvine and Bunny Kishaba, Plaintiffs,

v.

HILTON HOTELS CORPORATION, dba Hilton Hawaiian Village, Earl McDonough, Nancy Isenburg, Serge D'Rovencourt, Dieter Seeger, John Does 1–10, Jane Does 1–10, Doe Corporations 1–10, and Doe Government Agencies 1–10, Defendants.

Civ. No. 87–0840 ACK.

United States District Court, D. Hawaii.

Oct. 7, 1988.

Howard R. Green, Michael A. Lilly, Green Ning Lilly & Jones, Honolulu, Hawaii, for plaintiffs.

Robert Katz, Sabrina Toma, Torkildson Katz Jossem Fonseca & Moore, Honolulu, Hawaii, for Hilton Hotels, Dieter Seeger, Serge D'Rovencourt, and McDonough.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

KAY, District Judge.

### BACKGROUND

On September 11, 1986 Leong resigned from her position as director of personnel at the Hilton Hawaiian Village. She then filed for unemployment compensation under HRS Chapter 383, the Hawaii Employment Security Law. Section 383-30(1) states that "an individual shall be disqualified for benefits for any week in which he has left his work voluntarily without good cause." On an initial form, Leong stated that she "quit" for "personal" reasons, but on a later form she stated that her immediate supervisor, Isenburg, had "undercut" her position at the hotel and that she had good cause to quit and was thus entitled to benefits.

Appearing pro se before the Claims Examiner of the Department of Labor and Industrial Relations, Unemployment Insurance Division, Leong presented lengthy testimony. But the Examiner held on October 27, 1986 that there was no conclusive evidence that Leong's position as director had been undercut or that continued employment was unsuitable. He denied the application on the grounds that her quitting was "for personal, non-compelling reasons and without cause" (Memorandum in Opposition to Motion for Summary Judgment, Exhibit B). After retaining counsel, Leong appealed the Examiner's decision to the Employment Security Appeals Referees' Office. In support of her contention that her job was undercut, she alleged that (a) Isenburg failed to appear in the office during the weekends when she requested that the staff come in to clean the office, (b) Isenburg and another employee changed the wording of a memorandum that Leong had prepared for a mass hiring interview, and changed the appearance of the interview room without consulting Leong, (c) Isenburg assigned another employee to attend a meeting that Leong normally would have attended, (d) Isenburg barred Leong from attending department head meetings, (e) Leong failed to receive a pay raise that she fairly believed she would receive, and (f) Isenburg insulted Leong during a discussion between them.

Isenburg testified that (a) she did appear on the occasion of the office cleanup but that Leong had already left, (b) she attempted to contact Leong regarding the changes in Leong's memorandum and room setup but instituted the changes after finding her unavailable, (c) she assigned another employee to attend the meeting because Leong was on vacation at the time of the assignment and Isenburg would not be able to instruct Leong before the meeting was to occur, (d) the department heads requested that non-department heads such as Leong not attend their meetings, and (e) the pay increase was put on hold because it needed special approval due to the size of the increase.

The Appeals Referee held after a full evidentiary hearing on the merits that the incidents Leong cited were not examples of undercutting or change in claimant's job duties. Neither did they show that she was unsupported in her work. Instead, according to the referee, the changes were reasonable modifications in work duties and rules, to be expected when there is a change in authority, taking into account a reshuffling of positions which occurred prior to the incidents which Leong alleged. The referee found that Leong's assertions of being undercut were unsubstantiated, that she failed to communicate her job dissatisfaction to her employer, and that she resigned for personal rather than real, substantial or compelling reasons. The referee then upheld the examiner's decision and concluded that Leong "did not have good cause for voluntarily leaving her job" (Memorandum in Opposition to Motion for Summary Judgment, Exhibit C).

Leong appealed the referee's decision to the Hawaii Circuit Court which held that "the Appeals Referee's decision was not clearly erroneous or defective on either procedural or substantive grounds. Accordingly, as a matter of law, the Court affirms the Referee's ruling that the Claimant quit her employment for personal noncompelling reasons—reasons which would not cause a reasonable worker to quit. Her voluntary quit thus was without 'good cause'" (Memorandum in Opposition to Motion for Summary Judgment, Exhibit D).

On November 16, 1987, Plaintiffs Leong (who alleges Chinese ancestry), Roy Sato, Clyde Keala Irvine, and Bunny Kishaba filed a complaint with this court alleging employment discrimination in violation of Title VII, constructive discharge in breach of an implied employment contract, constructive discharge in violation of public policy, intentional infliction of emotional distress, and violation of the Due Process and Equal Protection provision of the Hawaii State Constitution, Article I, Section 5. On June 13, 1988 this court granted summary judgment to Hilton Hotels on the Breach of Contract by Constructive Discharge claim as to Plaintiff Sato, 689 F.Supp. 1565. This court held that Sato was an employee at-will because of a document he signed to that effect at the start of his employment. This court further held that Hilton did not alter this relationship when it later promulgated its employee handbook since there was insufficient evidence that Hilton created an atmosphere of job security and fair treatment with promise of specific treatment in specific situation, inducing employees to remain and not actively seek other employment. *See, Kinoshita v. Canadian Airlines,* 724 P.2d 110 (Haw.1986).

Defendant now moves for summary judgment as to all of Leong's claims. Defendant first argues that because the state court decision affirming the administrative rulings concluded Leong was not constructively discharged, she is precluded by the doctrines of res judicata and collateral estoppel from relitigating that issue and thus from bringing any of her claims since they are all predicated on that issue. Second, Defendant argues that Leong has not established the existence of all elements essential to each of her claims and thus summary judgment is appropriate.

Plaintiff disputes the above points and adds that she has not had enough time for discovery.

## DISCUSSION

### A. *Res Judicata and Collateral Estoppel*

Defendant argues that Leong cannot assert her claims because they are all based on a constructive discharge theory and that issue was decided adverse to her in the administrative hearings concerning her application for unemployment insurance and in the state court which reviewed and upheld those decisions. Leong responds that in order to correctly apply the doctrine of res judicata, there must be an identity of issues and in the instant cases a claim for unemployment benefits is not identical to a civil suit to enforce civil, public policy, contract, and tort rights. Furthermore, she argues, res judicata only applies where the party precluded from litigation has had a full and fair opportunity to litigate the claim in the prior forum.

According to the United States Supreme Court, the federal courts have traditionally adhered to the common law doctrines of res judicata and collateral estoppel; "under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action" whereas under collateral estoppel, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980).

The starting point for a federal court requested to apply principles of res judicata to state judicial proceedings is 28 U.S.C. § 1738 which states that the preclusive effect of a state judicial proceeding in a subsequent federal judicial proceeding "shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such state from which they are taken." As the Ninth Circuit recently affirmed, "it is well settled that 28 U.S.C. § 1738 requires federal courts to give state court *reviewed* administrative adjudications the same full faith and credit that the adjudications would have in the state's own courts." *Mack v. South Bay Beer Distributors, Inc.* 798 F.2d 1279, 1283 (9th Cir 1986) (emphasis in original). Thus it is necessary for this court to examine Hawaii law to determine the appropriate preclusive effect to be given the state proceedings.

The Hawaii Supreme Court has delineated "the three critical issues to be considered in determining whether the principles of res judicata and collateral estoppel are applicable: [1] Was the issue decided in the prior adjudication identical with the one presented in the action in question? [2] Was there a final judgment on the merits? [3] Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?" *Santos v. State*, 64 Haw 648, 653, 646 P.2d 962 (1982) citing *Morneau v. Stark Enterprises, Ltd.*, 56 Haw 420, 424, 539 P.2d 472 (1975).

Defendant argues that each of plaintiff's claims in this court are based on a constructive discharge claim which was in fact litigated in the state proceeding.

■ Although Hawaii courts have not ruled on whether constructive discharge and employment discrimination are the same claims, the Ninth Circuit Court of Appeals has established that they are not, reasoning that claims cannot be determined identical if one of them could not have been raised in the state proceeding. Specifically, since Title VII claims may only be raised in federal court, they cannot be the same as state causes of action. In *Garrett v. City and County of San Francisco*, 818 F.2d 1515 (9th Cir.1987), the court refused to give res judicata effect to a state court holding that the San Francisco Fire Commission did not abuse its discretion in dismissing the plaintiff. The court held that "res judicata (claim preclusion) cannot apply because state courts lack subject matter jurisdiction of Title VII claims." *Id.* at 1519, (citing *Trujillo v. County of Santa Clara*, 775 F.2d 1359, 1366 (9th Cir.1985). See also *Hirst v. State of California*, 770 F.2d 776, 777 (9th Cir.1985) (sex discrimination claim under Title VII not barred in later federal suit even though raised in prior state proceedings: "because the state court could not adjudicate the Title VII claim, plaintiff's Title VII claim could not be barred by res judicata.")

Defendant's reliance on the U.S. Supreme Court's decision in *Kremer v. Chemical Construction Corp*, 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982) is erroneous. In *Kremer*, the Supreme Court held that a federal court must give preclusive effect in a later Title VII claim to a prior state court judgment affirming that a claim of employment discrimination is unproved. However that case is not controlling here in light of several factors. First, in this case, there was no state court judgment affirming that an already-litigated discrimination claim was unproved, as was present in *Kremer*. Second, the *Kremer* decision was essentially a holding that 28 U.S.C. § 1738's *Erie*-like preclusion rules apply to Title VII claims and in *Kremer* local case

law clearly showed that the state court would have precluded the later case. In the present case, by contrast, there is no such precedent from the Hawaii courts, only contrary reasoning from the Ninth Circuit.

■ However, as to plaintiff's remaining claims, Hawaii authority is clear. Applying the *Santos* test as set out above, it is apparent that Leong's remaining non-Title VII claims are precluded. The issue decided by the Appeals Referee was whether Leong had good cause to leave her job. Leong's remaining claims in federal court encompassing wrongful termination, breach of contract, violation of public policy, intentional infliction of emotional distress and violation of the Hawaii Constitution are all grounded in the claim of constructive discharge.

As for the specific matter of racial or national discrimination, that issue could have been raised in the prior proceeding. Res Judicata " 'precludes the relitigation, not only of the issues which were actually litigated in the first action, but also of all grounds of claim or defense which might have been properly litigated in the first action but were not litigated or decided.' *Estate of Bernice P. Bishop*, 36 Haw. 403, 416 (1943)." *Silver v. Queen's Hospital*, 63 Haw. 430, 435–36, 629 P.2d 1116 (1981). Administrative Rule 12–5–47 of the Rules and Regulations of the Department of Labor and Industrial Relations, State of Hawaii, defines "good cause" for resignation as

> (1) Change in working conditions and the change is prejudicial or detrimental to the health, safety, or morals of the claimant;
> (2) Change in terms and conditions of employment, including, but not limited to:
> change in rate of pay, position or grade, duties, days of work, or hours of work;
> (3) Discrimination which violates federal or state laws regarding equal employment opportunity practices;

Plaintiff's non-Title VII claims must be precluded if the remaining prongs of the *Santos* preclusion test are satisfied since she could have raised discrimination in the prior or proceedings which adjudicated the issue of constructive discharge.

The Appeals Referee's decision was appealed through the Circuit Court and was a final judgment on the merits. There is complete identity of the parties to the prior and instant proceeding. Finally, Leong had a full and fair opportunity to litigate the matters which will be precluded, in light of her extensive expertise in the area of employment grievances, the full evidentiary hearings and numerous appeals of which Leong took advantage, and her opportunity to have an attorney present throughout the proceedings in question. The character of these proceedings available to Leong satisfy *Kremer*'s due process inquiry required before application of claim preclusion. Plaintiff's non-Title VII claims are necessarily precluded by the prior state proceedings adjudicating the issue of constructive discharge.

■ Leong is thus left with her Title VII claim. However, defendant argues that *issues* decided by the state proceedings should be precluded in this court. Specifically, defendant argues that collateral estoppel rather than res judicata can operate to preclude relitigation of the constructive discharge issue in Leong's claim. 28 U.S. C. § 1738 directs this court to Hawaii law for the answer. As stated above, *Santos* requires identity of issues in both proceedings before collateral estoppel will apply. This prong is satisfied; the only issue actually decided in state court, whether constructive termination occurred through an undercutting of job responsibilities, is not only present, but central to Leong's Title VII claim. Her claim in federal court is that the employer's activities outlined in her complaint were motivated by a discriminatory animus which ultimately caused her to resign. As discussed earlier, plaintiff was free to raise this theory in the state proceeding and had every incentive to do so. Her failure to raise this theory does not foreclose use of collateral estoppel to preclude relitigation of the constructive discharge claim.

The Hawaii Supreme Court recently held that "if a new legal theory or factual assertion advanced in a second action is relevant to the subject matter and the issue adjudicated in a first action, so that it could have been raised in the first action, collateral estoppel applies notwithstanding the failure to raise the legal theory or factual assertion in the first action." *Intern. Broth. v. Hawaiian Telephone*, 713 P.2d 943, 956 (1986). Therefore, plaintiff is precluded from relitigating her claimed motivation for leaving Hilton and Hilton's alleged racially discriminatory motivation for those events already adjudicated as legitimate employer actions.

■ The one issue not litigated in Leong's prior state court proceeding which she could not have presented as a part of the subject matter of that action, an alleged demotion, cannot, as pleaded, form the basis for her Title VII claim. Leong's only damages alleged in her complaint regarding a demotion are damages for mental distress. However the Ninth Circuit held in *Shah v. Mount Zion Hospital*, 642 F.2d 268 (9th Cir.1981) that Title VII does not provide for recovery of mental distress or punitive damages. Thus, assuming for purposes of this summary judgment motion that Leong was demoted and that the demotion was caused by racial discrimination, she would be unable to recover as a matter of law under Title VII for what she claims to have suffered as a result of the demotion.

## B. *Rule 56(f)*

Rule 56(f) of the Federal Rules of Civil Procedure authorizes a party to submit affidavits stating reasons for her inability to present facts essential to justify her opposition to a motion for summary judgment. The court then has the discretion to order a continuance to permit discovery. *Program Engineering v. Triangle Publications*, 634 F.2d 1188 (9th Cir 1980). The Ninth Circuit has allowed consideration of Rule 56(f) continuance without mandating strict compliance with the affidavit requirement but has not permitted Rule 56(f) consideration in the absence of at least some formal action

supplementary to mere requests for additional discovery. Thus in *Program Engineering*, the court found that although there were no affidavits or motions for continuance, the party opposing the motion for summary judgment satisfied Rule 56(f) requirements by filing a motion to strike those portions of the summary judgment motion which had been excluded from discovery by earlier district court order. *Id.* at 1191. In *Hancock v. Montgomery Ward Long Term Disability*, 787 F.2d 1302 (9th Cir.1986), the court found Rule 56(f) consideration appropriate since although proper procedures were not followed, a motion to compel discovery was pending and counsel for the party opposing the summary judgment motion had filed an affidavit which referred to the motion to compel and to the specific information requested.

However, the Ninth Circuit has also been wary of a complete ignorance of any formal process. In *Foster v. Arcata Associates, Inc*, 772 F.2d 1453 (9th Cir.1985), the court refused to overturn a district court denial of a continuance since the appellant "failed to follow the proper procedures under the Federal Civil Rules of Procedure for obtaining a continuance or other appropriate discovery order." *Id.* at 1467. In that case no affidavits were filed, nor was a motion for continuance made or any other formal procedure followed. Similarly, in *Brae Transportation Inc. v. Coopers & Lybrand*, 790 F.2d 1439 (9th Cir.1986), where no particular procedures were used to implement Rule 56(f) consideration, the court stated that "references in memoranda and declarations to a need for discovery do not qualify as motions under Rule 56(f) ... failure to comply with the requirements of Rule 56(f) is a proper ground for denying discovery and proceeding to summary judgment." *Id.* at 1443. Leong has failed to follow any formal procedure for requesting consideration under Rule 56(f). She has filed no affidavits whatever, and has not filed a motion to compel discovery or to continue this summary judgment proceeding until additional discovery can be conducted. Her only mention of discovery is contained in her Memorandum in Opposi-

tion which complains of Hilton's unwillingness to provide documents pursuant to broad requests, and alleges bad faith (Memorandum in Opposition, pp. 19–22). Plaintiff declined to move under Rule 56(f) when expressly asked by the Court if such was her wish. Because the district judge has wide latitude in controlling discovery, this Court will decline to act sua sponte to continue the summary judgment motion on these facts.

## C. *Failure to State Essential Facts*

Plaintiff has not met her burden under Rule 56 even if preclusion does not dispose of her claims before this Court. Rule 56(c) of the Federal Rules of Civil Procedure states that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Defendant argues that Leong cannot prevail in this summary judgment motion because she is unable to establish the existence of all of the elements essential to her claims. Defendant cites *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) for the proposition that such a failure on the part of the plaintiff facilitates the granting of a motion for summary judgment. In *Celotex*, the Supreme Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 2552.

Proceeding as directed by *Celotex*, it is necessary to determine what must be shown by a Title VII plaintiff in order to prevail in a summary judgment motion submitted by defendant. A Title VII discrimination claim for disparate treatment requires that a "plaintiff must first establish a prima facie case of discrimination. If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate a legitimate nondiscriminatory reason for its employment decision. Then, in order to prevail, the plaintiff must demonstrate that the employer's alleged reason for the adverse employment decision is a pretext for another motive which is discriminatory." *Yartzoff v. Thomas* 809 F.2d 1371, 1374 (9th Cir.1987), citing *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 1824–26, 36 L.Ed.2d 668 (1973), *Lowe v. City of Monrovia*, 775 F.2d 998, 1005 (9th Cir.1985), amended, 784 F.2d 1407 (9th Cir.1986).

■ Assuming for purposes of this summary judgment motion that Leong can make out a prima facie case of discrimination based on the incidents alleged in her complaint, together with the testimony regarding the racial prejudice of the person ultimately in charge of hiring and firing at the Hilton, Mr. Earl McDonough, Senior Vice President for Hilton in Hawaii (see Complaint, Exhibit G, p. 4), it does not appear that she has offered any pretext for the reasons proffered by defendant regarding the allegations in the complaint. Indeed, Leong admits that Hilton's decision to "replace" her with Ted Baird (the occurrence which she later deemed a demotion) was the "smartest thing [Hilton] ever did" and describes Baird as "significantly better qualified" than herself (Leong Depo. at pp. 42, 56, 90). As for the other identified incidents, both the state decisions and the Motion for Summary Judgment (and the Reply) provide "legitimate, nondiscriminatory reasons" for those remaining allegations in the complaint. Leong merely repeats her Complaint allegations in her Memorandum in Opposition and states that she expects additional information during discovery.

Even if McDonough is found to be a person riddled with racial prejudice, there is no evidence presented as to how this admittedly undesirable characteristic translates into concrete job discrimination of the sort which is actionable under Title VII. The claimant must produce "specific, substantial evidence of pretext" and must show that race was a determining factor in the various allegedly discriminatory prac-

tices. *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir.1983). The testimony regarding an officer's derogatory racial statements is not enough to establish Leong's claim. *Stallcop v. Kaiser Foundation Hospitals*, 820 F.2d 1044 (9th Cir. 1987) ("derogatory ethnic statements, unless excessive and opprobrious, are insufficient to establish a case of national origin discrimination").

Summary judgment is appropriate on the Title VII and remaining discrimination claims if they are not otherwise precluded. Because Leong has not tendered substantial evidence to rebut defendant's legitimate reasons proffered for particular incidents described in the complaint, plaintiff has failed to carry her burden of showing pretext and thus summary judgment is granted on her Title VII claim.

As an alternative holding with respect to Count III, which alleges that defendant breached an employment contract through constructive discharge, this court grants summary judgment on the following ground. As discussed above, partial summary judgment was granted to plaintiff Sato with regard to the identical constructive discharge claim. Plaintiff Leong has not submitted any additional argument or facts which would justify a different result and in fact there is further evidence that Leong was an at-will employee.

No additional evidence was presented to refute the Court's finding that the employee handbook failed to change the at-will status of the employees. Further, considering Leong's management and employee relations posture in the corporation and her extensive personnel experience, it is highly probable that not only was Leong aware of her status as an at-will employee, but she was fully cognizant of the ramifications of that status. Leong admits to knowing at least one employee who was fired from Hilton in the past, as opposed to Sato, who claimed that he believed no one ever got fired after their probationary period at Hilton. Moreover, in a letter to the fired employee, Leong stated that "our efforts have been frustrated by the fact that the

labor laws in Hawaii are virtually nil when it comes to protecting at-will employees." Leong was unable to satisfactorily explain this statement.

In short, no new evidence has been presented and no additional citations have been offered to support Leong's claim or distinguish it from Sato's (except there is no evidence she signed the initial at-will form). No arguments have been made to this court that the prior ruling against Leong's co-plaintiff was erroneous or is inapplicable to the instant facts. Thus for the same reasons summary judgment was granted earlier against Plaintiff Sato, summary judgment is hereby granted on the same count as an alternative holding against Plaintiff Leong.

■ As an alternative holding with respect to Count V, which alleges that defendant violated Article I, Section 5 of the Hawaii Constitution, this Court grants summary judgment on the following ground. This Court held in *Kinoshita v. Canadian Pacific Airlines Ltd*, Civil No. 83–0012 (July 17, 1987) (on remand), that the provisions of the Hawaii State Constitution apply only to state action, not private action. *Id.* at p. 10, citing *Simpson v. Western Graphics Corp.*, 631 P.2d 805, 808 (1981). Since there is no evidence presented that there is a nexus between the Hilton Hotel and the State of Hawaii, this claim is meritless.

For the foregoing reasons, defendant's motion for summary judgment is hereby granted.