William P. CARROLL and Jo
Ann Carroll, Plaintiffs,

v.

MAUI COUNTY; Linda Crockett Lingle, Individually and as Mayor of Maui County; George N. Kaya, Individually and as Director of the Maui County Department of Public Works; Eassie Miller, Melvin Hipolito, Jerry Morgan, Steven Parabicoli, and Ian Suzuki, Individually and as employees of the Maui County Department of Public Works; and Victor Moreland, and Harold Yee, as Members of the State of Hawaii Board of Certification of Wastewater Plant Operators, Defendants.

Civ. No. 92–00729 SPK.

United States District Court,
D. Hawai'i.

Oct. 21, 1994.

Robert A. Smith, Kaneohe, HI, for plaintiffs.

Cyrus W. Chan, David M. Jorgensen, Deputies Corp. Counsel, Guy A. Haywood, Corp. Counsel, Wailuku, Maui, HI, for County of Maui and for defendants sued in their official capacities.

## ORDER DENYING DEFENDANT MAUI COUNTY'S MOTION FOR PARTIAL SUMMARY JUDGMENT RE ALL WRONGFUL DISCHARGE CLAIMS

SAMUEL P. KING, Senior District Judge.

### I. THE MOTION

This case arises from the dismissal of Plaintiff William P. Carroll from employment with Maui County on August 19, 1992. His second amended complaint basically alleges that the Defendants conspired to silence him and that he was fired for whistleblowing in violation of Haw.Rev.Stat. § 378–62 and the United States Constitution. He asserted several causes of action including wrongful discharge, violations of 42 U.S.C. § 1983, violations of Civil RICO provisions (18 U.S.C. §§ 1961–65), as well as various other common law claims. In previous orders, this court dismissed some of the causes of action against certain defendants. In the present motion, Defendant County of Maui and Defendants Lingle, Kaya, Miller, Hipolito, Morgan, Parabicoli, and Suzuki, in their official

capacities (collectively, "the Maui County Defendants"), have moved for partial summary judgment on all wrongful discharge claims, asserting that Plaintiff[1] is barred by doctrines of prior adjudication (i.e. res judicata and collateral estoppel) from litigating such claims. This court heard the matter on August 12, 1994. Robert A. Smith represented Plaintiff, Cyrus W. Chan appeared for the Maui County Defendants, Daniel A. Bent appeared for Maui employee Defendants (other than Lingle and Kaya) in their individual capacities, and other defendants joined.

### II. BACKGROUND

Plaintiff was an operator at a Maui County Wastewater Reclamation Facility ("WWRF"). After being hired in 1989, he made a series of complaints to superiors, the Department of Health, the Environmental Protection Agency, the media,[2] and others. Plaintiff allegedly is well-known as a "staunch advocate of compliance with environmental regulations."

Among Plaintiff's complaints were that Maui County was hiring an improperly qualified individual and that the State Board of Certification of Wastewater Plant Operators ("Board") was improperly certifying the individual in violation of its regulations. The Board asked Plaintiff for proof of his allegations. Plaintiff responded by producing documents obtained from the individual's personnel file. Apparently, the Board then presented the documents to Defendant Kaya, Director of the Maui County Department of Public Works.[3] Plaintiff was then fired by Maui County for (1) producing confidential documents without prior authority,[4] (2) alter-

---

1. Although there are two plaintiffs, this decision refers to them collectively, as "Plaintiff" or "Carroll."

2. Carroll allegedly reported sewage spill violations, an offer of a bribe by a manufacturer's representative, and malfunctioning machines. Supervisors allegedly ignored his reports. In one incident in 1990, he was reprimanded by Maui County after swimming in treated effluent in a chlorine contact chamber purportedly to demonstrate safety. His demonstration was reported on news broadcast on KITV Channel 4.

3. Defendants Miller, Hipolito, Morgan, Suzuki, and Parabicoli are also officials in the Maui

County Department of Public Works. Defendant Lingle is the current Mayor of Maui County. Defendants Moreland and Yee are Board members.

4. Apparently Plaintiff violated Department Rules and Haw.Rev.Stat. § 92F–13(1). Section 92F–13 reads, in pertinent part:

[The Uniform Information Practices Act] shall not require disclosure of: (1) Government records which, if disclosed, would constitute a clearly unwarranted invasion of personal privacy[.]

Section 92F–14(a) provides:

ing information on a government document, and (3) insubordination for deliberately refusing to carry out a proper order from a superior (Plaintiff refused to reveal who gave him the documents).

After being fired, Plaintiff applied for unemployment compensation benefits. A claims examiner disqualified him from receiving benefits pursuant to Haw.Rev.Stat. § 383–30(2) [5] because he was "discharged for misconduct connected with work." Plaintiff appealed the examiner's determination to the State Department of Labor and Industrial Relations, Employment Security Appeals Office. After a hearing, an appeals officer affirmed the determination. The December 15, 1992 decision provides in pertinent part:

> The relevant issue in this case is whether the claimant was discharged for misconduct connected with work.

> The issue in this case is whether or not those reasons cited by the employer for claimant's discharge constituted misconduct connected with work. As stated above, misconduct may be found where there is a willful or deliberate disregard of the employer's interest or a knowing violation of the standards of behavior which an employer has the right to expect of an employee. With reference to employer's charge that claimant altered a document, there is no evidence that a document was altered or that such alternation was critical to the discharge. Therefore, employer's charge of altering a document is not given weight in this matter. Claimant refuses to divulge the name of the individual(s) whom he states obtained the copies of the documents from the employee's personnel file and gave it [to] him. As such, in the absence of any other evidence, it is concluded that claimant obtained the documents from the employee's file and copied these documents for his personal use. The evidence in the record establishes, more-

over, that claimant was aware that access to the files was restricted to only certain individuals in management capacity and that such documents were private. Claimant was also aware that he was prohibited from removing any documents from these files without permission from the individual. Despite claimant's awareness of these requirements, the facts show that claimant released information from an employee's personnel file to a third party without the expressed permission from the employee in question.

> Claimant's actions to take this route was a consc[ious] and willful decision on his part. The personnel rules and regulations specifically state that all documents in an employee's personnel file are confidential and may be released only under specific conditions. Claimant's bargaining unit also limits access to an employee's personnel file to that individual himself. Claimant knew, or should reasonably have known, therefore, that accessing another individual's personnel file when he was not in a position or authority to do so, removing such documents from a personnel file without permission from the employer, and *releasing such information to a third party without the expressed permission of the employee in question was a clear violation of the personnel rules and regulations* and a deliberate disregard of the employer's interests and of the standards of behavior which an employer has a right to expect of an employee. The claimant was discharged for misconduct connected with work.

> *DECISION*

> The determination of the Department is affirmed. The claimant is disqualified for benefits beginning August 16, 1992, and continuing until he is reemployed and paid wages five times his weekly benefit amount after August 22, 1992, on the basis that he

---

Disclosure of a government record shall not constitute a clearly unwarranted invasion of personal privacy if the public interest in disclosure outweighs the privacy interests of the individual.

In other words, if public interest dictates, the records may be disclosed without violating Chapter 92F.

**5.** Section 383–30 provides, in pertinent part: "An individual shall be disqualified for benefits:.... For any week ... in which the individual has been discharged for misconduct connected with work[.]"

was discharged for misconduct connected with work.

Exhibit 7 to the Maui County Defendants' motion (emphasis added).

Plaintiff did not appeal the decision. Haw. Rev.Stat. § 383–41 provides that decisions on unemployment benefits may be judicially reviewed by state circuit court. Because Plaintiff did not seek judicial review, the decision became final 30 days after being issued.

## III. DISCUSSION

Given the decision in Plaintiff's unemployment compensation proceeding, the dispositive question is whether this court should grant partial summary judgment on all claims in this suit sounding in wrongful discharge because doctrines of prior adjudication bar such claims. For the reasons set forth, the answer is no. Therefore, Defendants' motion is DENIED.

### A. *Leong v. Hilton Hotels*

The Maui County Defendants rely on *Leong v. Hilton Hotels Corp.*, 698 F.Supp. 1496 (D.Haw.1988). The *Leong* court held that a former employee's discrimination-related claims were barred on res judicata grounds because the claims were grounded on a showing of constructive discharge, which had been adversely determined in her previous unemployment compensation proceeding. *Leong*, however, is distinguishable from the present case in several critical ways.

In *Leong*, plaintiff Susan Leong resigned from her position as director of personnel at the Hilton Hawaiian Village, and filed for unemployment compensation. Leong initially stated that she "quit" for "personal" reasons; she later stated that her immediate supervisor had "undercut" her position at the hotel and that she had "good cause" to quit and was thus entitled to benefits.[6] Leong appeared pro se before the Claims Examiner of the State Department of Labor and Industrial Relations, Unemployment Insurance Division. The Examiner determined that there was no conclusive evidence that Leong's position had been undercut or that continued

employment was unsuitable. The Examiner denied Leong's application, determining that she quit "for personal, non-compelling reasons and without cause." 698 F.Supp. at 1497.

Leong retained counsel and appealed the Examiner's decision to the Employment Security Appeals Office. After a full evidentiary hearing on the merits, the Appeals Referee affirmed the denial of her unemployment benefits. Leong subsequently lost her appeal of the Referee's decision to the State Circuit Court. The circuit court held that the Referee's decision was not clearly erroneous or defective on either procedural or substantive grounds. *Id.* at 1498.

Leong then filed a complaint in federal court alleging a Title VII claim, constructive discharge in breach of an implied employment contract, constructive discharge in violation of public policy, intentional infliction of emotional distress, and violation of the due process and equal protection provisions of the Hawaii Constitution. Defendants moved for summary judgment, arguing that doctrines of prior adjudication prevented her from relitigating the essential issue of constructive discharge.

The *Leong* court noted that 28 U.S.C. § 1738 requires "federal courts to give state court *reviewed* administrative adjudications the same full faith and credit that the adjudication would have in the state's own courts." 698 F.Supp. at 1499 (quoting *Mack v. South Bay Beer Distributors, Inc.*, 798 F.2d 1279, 1283 (9th Cir.1986) (emphasis in original)). Thus, the court applied Hawaii law. The court recognized that "three critical issues [are] considered in determining whether the principles of res judicata and collateral estoppel are applicable: (1) Was the issue decided in the prior adjudication identical with the one presented in the action in question? (2) Was there a final judgment on the merits? (3) Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?" 698 F.Supp. at 1499 (citing *Santos v. State*, 64 Haw. 648, 653, 646 P.2d 962 (1982)). The court then held:

6. Haw.Rev.Stat. § 383–30(1) states that "an individual shall be disqualified for benefits for any

week in which he has left his work voluntarily without good cause."

The issue decided by the Appeals Referee was whether Leong had good cause to leave her job. Leong's remaining claims in federal court encompassing wrongful termination, breach of contract, violation of public policy, intentional infliction of emotional distress and violation of the Hawaii Constitution are all grounded in the claim of constructive discharge.

As for the specific matter of racial or national discrimination, that issue could have been raised in the prior proceeding. *Res Judicata* " 'precludes the relitigation, not only of the issues which were actually litigated in the first action, but also of all grounds of claim or defense which might have been properly litigated in the first action but were not litigated or decided.' Estate of Bernice P. Bishop, 36 Haw. 403, 416 (1943)." *Silver v. Queen's Hospital,* 63 Haw. 430, 435–36, 629 P.2d 1116 (1981).

698 F.Supp. at 1500 (emphasis added). The *Leong* court also reasoned that

> Administrative Rule 12–5–47 of the Rules and Regulations of the Department of Labor and Industrial Relations, State of Hawaii, defines "good cause" for resignation as [inter alia]:
>
> . . . .
>
> (3) Discrimination which violates federal or state laws regarding equal employment opportunity practices;
>
> Plaintiff's non-Title VII claims must be precluded if the remaining prongs of the *Santos* preclusion test are satisfied since she could have raised discrimination in the prior proceedings which adjudicated the issue of constructive discharge.

*Id.*

In *Pele Defense Fund v. Paty,* 73 Haw. 578, 837 P.2d 1247 (1992), the Hawaii Supreme Court reiterated the general principles of res judicata and collateral estoppel that were noted in *Santos,* emphasizing that "these principles are tempered only by the prerequisite that a plaintiff have a full and fair opportunity to litigate the relevant issues." 73 Haw. at 600, 837 P.2d at 1261.

Indeed, in *Leong,* the court analyzed "fully and fair opportunity to litigate," stressing several factors:

> The Appeals Referee's decision was appealed through the Circuit Court and was a final judgment on the merits.... Leong had a full and fair opportunity to litigate the matters which will be precluded, in light of her extensive expertise in the area of employment grievances [(she was the personnel director)], the full evidentiary hearings and numerous appeals of which Leong took advantage, and her opportunity to have an attorney present throughout the proceedings in question.

698 F.Supp. at 1500.

The Maui County Defendants argue that, like *Leong,* the *Santos* test is satisfied here since the parties involved are identical, and Plaintiff had a "full and fair opportunity" to raise and appeal his claims. The County points to Plaintiff's deposition testimony where he admits that he could have raised all the claims he asserts against the County now in the administrative proceeding below.

In opposition, Plaintiff responds that he did not have a "full and fair opportunity to litigate the issue" because, unlike *Leong,* Plaintiff's administrative decision here was unreviewed by state courts. Plaintiff also reasons that: (1) the Appeals Officer refused to consider his First Amendment and whistleblower claims; (2) the Appeals Officer, who is not an attorney, had a limited charter, and refused his requests to subpoena witnesses; (3) the hearing did not provide for discovery; and (4) he did not have counsel, while the County was represented by a Deputy Corporation Counsel.

This court agrees that Plaintiff did not have a full and fair opportunity to litigate his claims sounding in wrongful discharge. In particular, the Appeals Officer specifically refused to consider whether Plaintiff's disclosure of personnel documents (assuming they were confidential) was protected by HRS § 92F–14, quoted earlier, or HRS § 378–62 [7]

7. Section 378–62 provides in pertinent part:

> An employer shall not discharge, threaten, or otherwise discriminate against an employee ... because:

or both. The Officer told Plaintiff at the hearing:

> Mr. Carroll, with reference to your request for subpoena that you submitted on October 8 for Jerry Morgan.... The reason that [your] subpoena request was denied, sir, is that you've already testified as to what happened at the Board meeting, why you presented the documents to the Board.... What happened and the merits of your complaint to the Board is not the issue before me. [Hearing Tr. 10/9/92, at 2–3].

Later, the Officer said:

> You understand that I'm not here to determine the validity of your complaint of whether or not Mr. Grov [sic] meets the requirements or not.... The only issue is whether or not the reasons as presented by the employer for your discharge constitutes misconduct connected with work, therefore, we have to separate your complaint to the certification board from this proceeding because that's not relevant. [Id. at 38].

Neither did the Appeals Officer's decision give any indication that she considered whether the disclosure was protected.

Moreover, it is not clear whether the appeals officer should consider, or even has authority to consider, such "defenses." In *Leong,* the officer was determining whether the plaintiff was separated for "good cause." In making such a determination, Hawaii Administrative Rule ("HAR") 12–5–47(c)(1)(3) specifically provides for consideration of "discrimination which violates federal or state laws regarding equal employment opportunity practices." Here, unlike *Leong,* the Appeals Officer was making a determination of

> (1) The employee ... reports or is about to report to a public body, verbally or in writing, a violation or a suspected violation of a law or rule adopted pursuant to law of this State, a political subdivision of this State, or the United States[.]

8. The *Swineford* court reasoned that:

> [T]he issue of discharge before the [unemployment compensation board] is not identical to the issue of discharge presented in a civil rights claim. Furthermore, we do not think that an administrative agency consisting of lay persons has the expertise to issue binding pro-

whether Plaintiff was "discharged for misconduct connected with work" under HAR 12–5–51. No specific HAR section provides for the officer to consider whether federal or state employment laws are violated (although HAR 12–5–51(d)(1) provides generally that "the department shall consider any relevant evidence presented which relates to ... Employee's reasons for the act"). *Cf. Swineford v. Snyder County Pennsylvania,* 15 F.3d 1258 (3d Cir.1994) (analyzing offensive collateral estoppel).[8]

Furthermore, Hawaii case law indicates that Hawaii courts would not give preclusive effect to the administrative proceedings in this case. Unlike *Santos,* where critical aspects of the case had been reviewed by the Hawaii Public Employment Relations Board and State Circuit Court, the decision here was unreviewed. In *State v. Alvey,* 67 Haw. 49, 678 P.2d 5 (1984), the Hawaii Supreme Court also indicated that "a helpful supplement to the [*Santos*] list" in deciding whether to give preclusive effect to administrative agency decisions are two factors: .

> The first is procedural [comparing] the quality and intensiveness of the opportunity to litigate, and the incentive to litigate.... Assuming that the procedural opportunity afforded in the original action warrants normal application of the rules of res judicata, a second consideration arises. That consideration is whether extrinsic policies indicate that the second forum should nevertheless examine the matter in question anew. These policies concern the relative competence and responsibility of the two forums, for example, as between an administrative agency and a court.

> nouncements in the area of federal constitutional law.
> 
> ....
> 
> Furthermore, sound policy supports this decision. The Unemployment Compensation law is a depression-era statute. Its twin goals are to provide quick, basic compensation for workers who become unemployed through no fault of their own.... Granting preclusive effect to [unemployment compensation board] findings ... would undermine the policy of providing quick relief.
>
> 15 F.3d at 1268–69 (citations and internal quotation marks omitted).

67 Haw. at 54, 678 P.2d at 8–9 (citations omitted). Also, in *Yarnell v. City Roofing, Inc.*, 8 Haw.App. 543, 812 P.2d 1199, *aff'd in part, rev'd in part on other grounds*, 72 Haw. 272, 813 P.2d 1386 (1991), the Hawaii Intermediate Court of Appeals indicated that in administrative situations "res judicata should be applied with flexibility. The doctrine should be qualified or rejected when its application would contravene an overriding public policy or result in manifest injustice[.]" 8 Haw.App. at 556–57, 812 P.2d at 1206. This court concludes that Hawaii courts would not give preclusive effect to unemployment compensation proceedings in a subsequent proceeding for claims sounding in wrongful discharge, where the plaintiff did not have a full and fair opportunity to litigate its claims.

For these reasons, *Leong* does not apply to the situation at bar; res judicata principles do not preclude Plaintiff's wrongful discharge claims.

**B. The effect of Plaintiff's failure to appeal the administrative decision.**

The preceding analysis does not end the inquiry. The Maui County Defendants also argue that Plaintiff should not benefit from his failure to appeal the decision affirming his denial of unemployment compensation benefits. They assert that *unreviewed* agency findings and conclusions of law are also given preclusive effect, and that this court should apply collateral estoppel to bar relitigation of wrongful discharge claims.

In *University of Tennessee v. Elliott*, 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986), the Supreme Court held that "when a state agency acting in a judicial capacity resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." *Id.* at 799, 106 S.Ct. at 3226 (internal quotations and citations omitted). The standard was first announced

in *United States v. Utah Construction & Mining Co.*, 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966) (preclusive effect to federal administrative decisions) and later affirmed by *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982).[9]

In *Elliott*, plaintiff, a black employee of the University of Tennessee was fired for inadequate work performance and misconduct on the job. He requested an administrative hearing. Prior to the commencement of the administrative proceedings, plaintiff filed suit in federal court seeking relief under Title VII and the Reconstruction Civil Rights Statutes. The court allowed the administrative proceedings to go forward and an administrative law judge ruled that plaintiff's discharge was not racially motivated. Instead of seeking state court review of the administrative proceedings, plaintiff returned to federal court. The court granted summary judgment for the University on the ground that the administrative law judge's ruling was entitled to preclusive effect. The Court of Appeals reversed, but the Supreme Court reversed the Court of Appeals, holding that the court must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts.

Thus, for the unreviewed determinations of an administrative agency to have preclusive effect, *Elliott* nevertheless requires that the *Utah Construction* standards be satisfied:

(1) The state agency must be acting in a "judicial capacity";

(2) The disputed issues must have been properly before the agency; and

(3) The parties must have had an adequate opportunity to litigate the issue.

478 U.S. at 797–98, 106 S.Ct. at 3225–26.

The Ninth Circuit has expanded on *Elliott*, giving some agency determinations of issues of *law* preclusive effect as well. *Eilrich v. Remas*, 839 F.2d 630 (9th Cir.), *cert. denied*, 488 U.S. 819, 109 S.Ct. 60, 102

---

9. The Supreme Court subsequently declined to apply preclusive effect to judicially unreviewed administrative findings in actions arising under the Federal Age Discrimination in Employment Act in *Astoria F.S. & L. Assn. v. Solimino*, 501 U.S. 104, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991). The *Solimino* holding does not diminish the effect of *Elliott*'s rule.

L.Ed.2d 38 (1988); *Guild Wineries and Distilleries v. Whitehall Co.*, 853 F.2d 755, 758 (9th Cir.1988).

In *Eilrich,* plaintiff, a municipal police officer, was discharged by the City of Riverbank after making statements about a controversy within the police department to the Riverbank City Council. A city administrative hearing officer, in upholding plaintiff's discharge, determined that the statements were not protected by the first amendment. After the decision, the City Attorney immediately sent a letter notifying plaintiff that judicial review of this determination by a California superior court was available. However, the administrative decision became final when plaintiff failed to appeal within the statutory period. Plaintiff subsequently filed a § 1983 action in the U.S. District Court claiming that the City impermissibly discharged him for exercising his first amendment rights. The district court granted summary judgment, finding that collateral estoppel barred consideration of the claim because the scope of protection afforded the statements by the first amendment had been determined in the prior proceeding. The Ninth Circuit affirmed, holding that under *Elliott,* collateral estoppel applied to bar plaintiff's § 1983 claim.

The Ninth Circuit specifically rejected plaintiff's argument that preclusion should not apply because the administrative decision was not reviewed by the California courts. The court noted that "[i]f an adequate opportunity for review is available, a losing party cannot obstruct the preclusive use of the state administrative decision simply by foregoing [the] right to appeal." *Eilrich,* 839 F.2d at 632, (quoting *Plaine v. McCabe,* 797 F.2d 713, 178 (9th Cir.1986)). Moreover, the court also noted that "[a]llowing relitigation of [plaintiff's] claims would encourage litigants to forego state court review to receive federal review in § 1983 actions. This result would contravene the dictate of *Elliott,*

where five Justices determined that § 1983 claims did not necessarily mandate a federal forum." *Id.* at 635.[10]

Importantly, the *Eilrich* court distinguished a previous case, *Mack v. South Bay Beer Distributors, Inc.,* 798 F.2d 1279 (9th Cir.1986), where preclusive effect was not given to an unreviewed administrative determination.

The court in *Mack* declined to give an unreviewed administrative hearing preclusive effect primarily because the plaintiff had had no opportunity to litigate his age discrimination claim, applying the *Utah Construction* standard. The nature of the unemployment compensation hearing had denied him the opportunity to litigate his claim and it was unclear if any evidence at all on the issue of age discrimination had been presented.

. . . .

The facts of this case are clearly distinguishable from those in *Mack,* where we could not determine from the record whether any evidence on the plaintiff's age discrimination claim had even been presented.

*Eilrich,* 839 F.2d at 633–34 (citations omitted).

In applying *Utah Construction,* the Ninth Circuit looked to the character of the proceedings:

In the present case, Eilrich was afforded a 14–day proceeding resembling a trial, documented by an eleven-volume transcript. . . . [B]oth sides were entitled to call, examine and cross-examine witnesses under oath or affirmation. At the hearing, both parties were represented by counsel, twenty-one sworn witnesses testified, subpoenas were issued, and both parties presented oral argument and written memoranda. Both sides briefed the first amendment issue, the hearing officer considered these arguments and applied the appropri-

---

**10.** In *Guild Wineries, supra,* the Ninth Circuit reaffirmed the principles of *Eilrich,* and held that administrative adjudications are entitled to preclusive effect, noting that "[w]e have held that the federal common law rules of preclusion described in *Elliott* extend to state administrative adjudications of legal as well as factual issues,

even if unreviewed, so long as the state proceeding satisfies the requirements of fairness outlined in *Utah Construction....*" (citations omitted). In *Guild Wineries,* the court gave preclusive effect to the administrative determinations and rulings made by the Massachusetts Alcoholic Beverages Control Commission.

ate legal standards to the facts surrounding Eilrich's statements and discharge. In addition, because the hearing officer applied an established rule to specific existing facts rather than establishing a rule of law applicable to future cases, he acted in a judicial capacity.

*Eilrich,* 839 F.2d at 634.

Clearly, the present case is more like *Mack* than *Eilrich.* The Appeals Officer was determining whether Carroll's conduct constituted misconduct under HAR § 12–5–51, as authorized by Haw.Rev.Stat. § 383–30(2). The Officer was acting in a judicial capacity. Therefore, the dispositive issue remains whether Plaintiff had a full and fair opportunity to litigate the issues. As analyzed previously, he did not.

Furthermore, applying the next element of *Utah Construction,* the disputed issues must have been "properly before the agency." The Ninth Circuit noted in *Guild Wineries* that "[a]n issue is properly before an administrative tribunal if that body has jurisdiction to decide it." 853 F.2d at 759. This is a matter of state law. Haw.Rev.Stat. §§ 383–30 et seq. provide for administrative determinations of whether a discharge is for "misconduct connected with work." However, as analyzed earlier, it is unclear whether the Employment Security Appeals Office has the authority to determine issue regarding the first amendment, the state Whistleblowers' Protection Act, and the Uniform Information Practices Act (Modified). On the contrary, sound policy indicates that the authority be limited to issues necessary to determine unemployment benefits.

Finally, the *Eilrich* court noted that the review that plaintiff failed to pursue was a de novo judicial review. 838 F.2d at 632. In contrast, here Plaintiff's review would have been confined to the administrative record, *see* Haw.Rev.Stat. § 91–14(f); *HOH Corp. v. Motor Vehicle Industry Licensing Bd.,* 69 Haw. 135, 736 P.2d 1271 (1987). The issue now before the court is not whether Plaintiff should receive unemployment benefits. The remaining issues involve whether he was wrongfully terminated in violation of HRS § 378–62 and the United States Constitution and whether he is entitled to damages under 42 U.S.C. § 1983.

## IV. CONCLUSION

Because Plaintiff did not have a "full and fair opportunity" to litigate his claims sounding in wrongful discharge in his unemployment compensation benefits proceeding, this court refuses to apply either issue preclusion or claim preclusion. Accordingly, Defendants' motion is DENIED.

IT IS SO ORDERED.